RHODE ISLAND HOSPITAL TRUST NATIONAL BANK *vs.*
PAUL N. VARADIAN & another,[1] trustees,[2] & others.[3]

Middlesex. October 5, 1994. - April 5, 1995.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Directed verdict, Judgment notwithstanding verdict. *Bank.*
*Negotiable Instruments*, Note. *Rules of Civil Procedure. Estoppel.*
*Contract*, Promissory estoppel, Offer and acceptance. *Words*,
"Promise."

In a civil action, the plaintiff timely and effectively preserved its right
under Mass. R. Civ. P. 50 (b) to challenge the sufficiency of the evi-
dence by a motion for judgment notwithstanding the verdict where the
plaintiff had moved for a directed verdict at the close of the defendant's
case and had orally renewed that motion before the jury commenced
deliberation. [845-848]

Evidence at a civil trial did not warrant a finding that the defendants rea-
sonably relied on the plaintiff bank's oral promise to provide a construc-
tion loan in the amount of $43,500,000, where both parties had contem-
plated a written agreement; moreover, in the circumstances, any
reliance by the defendants, who were experienced businessmen, would
be unreasonable as matter of law. [848-850]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 21, 1988.

The case was tried before *J. Owen Todd*, J.

The Supreme Judicial Court granted an application for di-
rect appellate review.

*Paul S. Samson* (*Isaac H. Peres* with him) for the
plaintiff.

[1]Irwin J. Nebelkopf.

[2]Of Harborside Landing Realty Trust and VAN Realty Trust.

[3]Varadian and Nebelkopf are also sued individually and as general
partners of Lynn Land Development Associates Limited Partnership and
Lynn Harbor Development Limited Partership.

*Cathy P. Brooks* (*Peter S. Brooks* with her) for the defendants.

O'CONNOR, J. This is the plaintiff bank's appeal. We granted direct appellate review, following requests for direct appellate review by all parties. The appeal relates to counts III, IV and V of the bank's complaint and to count I of the defendants' counterclaim. In count III of its complaint, the bank alleges that the defendants Varadian and Nebelkopf, as trustees of Harborside Landing Realty Trust, owe the bank $2,900,000 pursuant to a promissory note. Count IV alleges that Varadian and Nebelkopf are individually liable as guarantors of that note. Count V asserts that Varadian and Nebelkopf are individually liable on a $1,000,000 promissory note (line of credit). The defendants filed an answer denying the bank's claims. Subsequently, Varadian and Nebelkopf filed amended answers and counterclaims asserting in count I that the bank had breached an oral contract to lend $43,500,000 for the construction of a multi-unit condominium complex in Lynn called the "Harborside Project" with the asserted result that there was no liability on the aforesaid notes and guarantees and, instead, the bank was liable to Varadian and Nebelkopf for breach of contract.

The liability issues were tried to a jury. The parties stipulated to the execution and delivery of the relevant notes and to the unpaid balances. The trial focused on the alleged oral promise by the bank to provide a construction loan of $43,500,000 and on the circumstances relevant to the question whether Varadian and Nebelkopf's engagement in a costly course of action was a result of their reasonable reliance on the bank's alleged promise. The judge instructed the jury on the legal theory of promissory estoppel and submitted to the jury nine special verdict questions pursuant to Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974).

The jury answered the special questions substantially as follows: (1) Roland Lamothe or Robert Britton, bank personnel, had "apparent authority to make the construction loan"; (2) the bank intended to be bound only by an agreement in writing for the construction loan; (3) Varadian ·and

Nebelkopf understood that the bank intended only to be bound by an agreement in writing for the construction loan; (4) the bank, Varadian, and Nebelkopf did not "have a binding agreement that [the bank] would provide the construction financing for the proposed Harborside Landing Project"; (5) the bank did "promise to provide the construction financing for the proposed Harborside Landing Project to Mr. Varadian and Mr. Nebelkopf"; (6) the bank "reasonably intend[ed] the promise to make the construction loan for the Harborside Landing Project to induce Varadian and Nebelkopf to act or forbear from taking certain actions"; (7) Varadian and Nebelkopf reasonably relied on the bank's promise to provide the construction financing for the Harborside Landing project; (8) the bank "induce[d] Mr. Varadian and Mr. Nebelkopf to execute the note and guarantee for the Harborside Land Acquisition and the line of credit by a promise to provide the construction financing for the Project"; (9) the failure to provide construction financing did not render impossible the performance of Varadian and Nebelkopf due the bank under the notes and guarantees.

A trial on damages, before a second jury, followed. Following the jury's assessment of damages, and in keeping therewith, the following judgment, insofar as the judgment is material to this appeal, was entered:

> "With respect to Counts III, IV [and] V . . . of the Complaint, the Plaintiff [bank] takes nothing and those counts shall be dismissed, with prejudice and without costs.
> " . . . With respect to Count I of the Counterclaim upon liability by virtue of promissory estoppel:
> "(a) The Plaintiffs-in-Counterclaim, Varadian and Nebelkopf, individually and as they are general partners of Lynn Harbor Development Limited Partnership and as they are the trustees of Harborside Landing Realty Trust, recover of the Defendant-in-Counterclaim [the bank] the sum of $2,697,000.00 (consisting of $1,936,000.00 in reliance damages and $761,000.00 in

mitigation damages) together with interest from May 7, 1987 as provided by law and costs in the amount of $5,242.02;

"(b) that the Plaintiffs-in-Counterclaim, Varadian and Nebelkopf as they are the general partners of Lynn Harbor Development Limited Partnership, recover of the Defendant-in-Counterclaim [the bank] the sum of $650,000.00 together with interest from May 7, 1987 as provided by law and costs in the amount of $3,510.00; and

"(c) that the Plaintiffs-in-Counterclaim, Varadian and Nebelkopf as they are the general partners of Lynn Land Development Associates Limited Partnership and as they are the trustees of Van Realty Trust, recover of the Defendant-in-Counterclaim [the bank] the sum of $725,000 together with interest from May 7, 1987 as provided by law."

At the liability phase of the trial, after the defendants as plaintiffs-in-counterclaim introduced their evidence and rested, the bank moved for a directed verdict as to the counterclaims, setting forth specific grounds therefor including those on which the bank now relies. Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974). The motion was denied. The defendants (plaintiffs-in-counterclaim) did not request an opportunity to submit additional evidence. The bank then presented evidence and rested. The bank did not renew its motion for a directed verdict at that time. Plaintiff and defense counsel presented closing jury arguments and the judge instructed the jury. The judge called counsel to the sidebar to take objections and requests relating to the instructions. In the course of that discussion, counsel for the bank stated that he wanted to "renew [his] motion for directed verdict." The judge responded "Thank you." The defendants (plaintiffs-in-counterclaim) did not request an opportunity to present further evidence and the judge proceeded to supplement his jury instructions. The jury then retired to deliberate. After judgment entered, following the bifurcated liability and damages

trials, the bank filed motions for judgment notwithstanding the verdict pertaining to counts III, IV, and V of the bank's complaint and to the counterclaim. The judge denied the motions, explaining in a memorandum of decision that, although he "did not believe that a reliance by Messrs Varadian and Nebelkopf on an oral promise by officers of the Bank to lend $43 million was reasonable as evidenced by [his] decision on the Chapter 93A claim of the defendants" which is not at issue in this appeal, the judge was satisfied that the evidence was sufficient to warrant the jury's concluding both that the bank had made a sufficiently detailed promise to be enforceable and that the defendants reasonably relied on it.

On appeal, the bank argues, among other things, that the evidence was insufficient as a matter of law to warrant a finding that Varadian and Nebelkopf could reasonably rely on the bank's oral "promise" to grant a $43,500,000 construction loan, and that therefore the bank is entitled to judgment on counts III, IV, and V of its complaint and on count I of the counterclaim notwithstanding the verdict. We must first consider whether, as the defendants argue, the bank failed to protect its right to challenge the judge's denial of its motion for judgment notwithstanding the verdict.

Rule 50 of the Massachusetts Rules of Civil Procedure, 365 Mass. 814 (1974), provides in relevant part as follows:

"(a) Motion for Directed Verdict: When Made; Effect. A party may move for a directed verdict at the close of the evidence offered by an opponent, and may offer evidence in the event that the motion is not granted . . . . A party may also move for a directed verdict at the close of all the evidence. . . . A motion for a directed verdict shall state the specific grounds therefor. . . .

"(b) Motion for Judgment Notwithstanding the Verdict. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of

the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict . . . . "

The defendants (plaintiffs-in-counterclaim) correctly say that, "in the absence of an effective motion for directed verdict at trial, a party may not challenge the sufficiency of his opponent's evidence on appeal. *Deerskin Trading Post* v. *Spencer Press*, 398 Mass. 118, 125 (1986)[.] *International Fidelity [Ins.] Co.* v. *Wilson*, 387 Mass. 841, 846-847 (1983)." The defendants are also correct when they say that "[e]ven where a party did move for a directed verdict at trial, the appellate courts will not review the sufficiency of the evidence with respect to any matters or grounds that were not raised in the motion. *Bonofiglio* v. *Commercial Union [Ins.] Co.*, 411 Mass. 31, 34 (1991)." The critical question is whether the bank's motion for a directed verdict setting forth specific grounds, made at the close of the liability evidence offered by its opponents, plus bank counsel's oral statement made to the judge at the sidebar conference relative to the jury instructions, that counsel wanted to "renew [his] motion for a directed verdict" constitutes "a motion for a directed verdict made at the close of all the evidence" within the meaning of rule 50 (b) such that "the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." *Id.* We must consider whether under the rule, bank counsel's oral renewal of his directed verdict motion, articulated before the jury retired to deliberate, was (1) timely and (2) met the requirement as to specification of grounds. We conclude that the bank met those requirements and thus preserved the legal sufficiency of evidence question for appellate review.

"The requirement that a litigant state specific grounds in support of a motion for directed verdict is an important one.

It allows the judge knowingly to rule on the question before him, and it allows the opposing party an opportunity to rectify any deficiencies in its case — or, more precisely, an opportunity to seek leave from the court to do so." *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31, 34-35 (1991). The further requirement that, to preserve a right to challenge the sufficiency of the evidence by a motion for judgment notwithstanding the verdict, a party must have moved for a directed verdict "at the close of all evidence," Mass. R. Civ. P. 50 (b), is also born of a proper concern that the party against whom the motion is offered is put on notice concerning the alleged defect in his case at a time that is not too late to seek from the judge, also on notice, an opportunity to present the evidence asserted to be fatally missing. The rule is one of fairness, and the interest of fairness is met by construing the requirement of rule 50 (b) that a motion for directed verdict be made "at the close of all the evidence" as meaning that the motion must be made before the jury begins deliberations and, therefore, at a time when the trial judge may still permit the opponent to present further evidence.

The purpose of the rule is also met by our concluding, at least in the circumstances of this case, that bank counsel's renewal of his earlier filed motion for directed verdict, which set forth specific grounds for the motion, fairly brought to the attention of the judge and opposing parties the grounds of the renewed motion. There is no suggestion in this case that either the judge or any defendant was, in effect, "ambushed" by learning of the bank's contentions as to sufficiency of evidence for the first time after verdict. The following quotation from the court's opinion in *Quinn* v. *Southwest Wood Prods., Inc.*, 597 F.2d 1018, 1025 (5th Cir. 1979), is germane: "When a claimed deficiency in the evidence is called to the attention of the trial judge or counsel *before the jury has commenced deliberations*, counsel still may do whatever can be done to mend his case. But if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our

procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error." (Emphasis added.)

In his memorandum of decision on the bank's motions for judgment notwithstanding the verdict and for a new trial, the judge said, "In response to the defendants' claim that the [bank] had orally agreed to lend the defendants in excess of $43 million, the jury answered [in response to special questions pursuant to Mass. R. Civ. P. 49 (a)] that there was no binding contract in the traditional sense since a written agreement was contemplated by the parties. Further answers of the jury established a basis for liability on the part of the plaintiff grounded on a promissory estoppel, i.e. that the plaintiff ('Bank') is estopped to avoid the agreement to lend money because it was not in writing. Additionally, the jury found in response to a special question directed to the defendants' defense to Counts [III, IV, and V] that the Bank induced the execution of the underlying Notes and guarantees by the promise of the construction loan.

"An essential element under the promissory estoppel theory is that there be an unambiguous promise and that the party to whom the promise was made reasonably relied on the representation. *Pappas Industrial Parks, Inc.* v. *Psarros*, 24 Mass. App. Ct. 596, 599 (1987). The plaintiff urges that Messrs. Varadian and Nebelkopf could not have reasonably relied on the alleged oral promise, nor the Bank foreseen reliance because, as the jury found, the Bank intended to be bound only by a written agreement and those gentlemen understood that intention." (Footnote omitted.) Later in his memorandum the judge observed, "In the promissory estoppel case attention is to be focused upon the reasonableness of the reliance by the promisee. *Loranger Construction Corp.* v. *E.F. Hauserman Co.,* 6 Mass. App. Ct. [152] 159 [*S.C.,* 376 Mass. 757 (1978)]."

As we mentioned earlier in this opinion, the judge ruled that the evidence warranted a finding that the defendants reasonably relied on the bank's oral promise to provide a $43,500,000 construction loan. We disagree. We conclude

that the evidence did not warrant such a finding, and that the judgment for the defendants on counts III, IV, and V of the bank's complaint must be reversed and judgment for the bank on those counts must be entered. We conclude also that the judgment in favor of the defendants (plaintiffs-in-counterclaim) on the counterclaim must be reversed and judgment entered for the bank.

In *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 760-761 (1978), this court held, as had the Appeals Court [at the same case], 6 Mass. App. Ct. 152 (1978), that the evidence warranted a finding for the plaintiff "on the basis of the plaintiff's reliance on the defendant's promise. 'An offer which the offeror should reasonably expect to induce action or forbearance . . . is binding as an option contract to the extent necessary to avoid injustice.' Restatement (Second) of Contracts § 89B (2) and Illustration 6 (Tent. Drafts Nos. 1-7, 1973). . . . When a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract,' and it is enforceable pursuant to a 'traditional contract theory' antedating the modern doctrine of consideration. See *Sullivan* v. *O'Connor*, 363 Mass. 579, 588 n.6 (1973); Restatement (Second) of Contracts § 90, Comment a (Tent. Drafts Nos. 1-7, 1973). We do not use the expression 'promissory estoppel,' since it tends to confusion rather than clarity." *Id.* at 760-761. The above quoted language from this court's opinion in *Loranger* makes clear that the court was using the words "offer" and "promise" interchangeably. It is also clear from other language in the opinion, that the words "offer" and "promise" were used in the sense of "commitment" ("Of course, it was possible for the [defendant's] sales engineer to invite negotiations or offers. . . . But it was also possible for him to make a commitment. . . . We think the jury were warranted in . . . finding that the estimate, in the circumstances, was an offer or promise." *Id.* at 760). The court's use of the words "offer" and "promise" in the sense of "commitment" mirrors the Restatement's definition of "promise" as "a manifestation of an intention to act or refrain from acting in a specified way, so

as to justify a promisee in understanding that a *commitment* has been made" (emphasis added). Restatement (Second) of Contracts § 2 (1981). The clear implication of our decision in *Loranger, supra,* is that an action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration.

Here the evidence most favorable to the defendants (plaintiffs-in-counterclaim) in support of their promissory estoppel claim was that the bank made an oral "promise" which the bank did not intend, and the defendants did not understand, to be a commitment because both parties contemplated a written agreement that would govern the intricacies of a $43,500,000 construction loan. "It is a settled principle of contract law that '[a] promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract.' *Kuzmeskus* v. *Pickup Motor Co.,* 330 Mass. 490, 493 (1953). *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.,* 312 Mass. 501, 506 (1942). *Wellington* v. *Apthorp,* 145 Mass. 69, 74 (1887)." *Schwanbeck* v. *Federal-Mogul Corp.,* 412 Mass. 703, 706 (1992). We conclude that the evidence in this case did not warrant a finding that a "promise" in the contractual sense had been made, and therefore no amount of reliance on the part of the promisees would give rise to a "contract" by virtue of reliance. A related but independent ground for our holding is our conclusion that, because the evidence in this case did not warrant a finding that a "promise" in the contractual sense had been made, any reliance by the defendants (plaintiffs-in-counterclaim), who were experienced businessmen (the jury would not have been warranted in finding otherwise), would be unreasonable as a matter of law. *Loranger Constr. Corp., supra* at 761.

The judgment as to counts III, IV, and V of the bank's complaint is reversed. The case is remanded for an assessment of damages and judgment for the bank consistent with the parties' stipulation in the trial court.

The judgment for the defendants (plaintiffs-in-counter-claim) on the counterclaim is reversed and judgment is to be entered for the bank.

*So ordered.*