McHugh, J.
BACKGROUND
This is a case in which plaintiff seeks to recover for injuries she suffered in a one-car automobile accident as she was driving home alone from work. She claims that the accident resulted from an epileptic seizure and that she was alone in her automobile at the time of the seizure because of defendants’ negligence and breach of contract. Defendants have moved for summary judgment on both of plaintiffs claims.
UNDISPUTED FACTS
The record, viewed as it must be in the light most favorable to plaintiff, establishes for present purposes that in the 1970s, plaintiff, Kathiyn Leaiy (“Leary”), while a teenager, was diagnosed with epilepsy. During the more than twenty years between her diagnosis and the accident that is the subject of this case, Leary *630 continued to suffer from epilepsy. As a result of her condition, she from time to time would experience sudden and unexpected seizures.
For some time prior to the accident, Leaiy had been under the continuing care of Dr. Sanford Levy, a neurologist, for her condition. In May 1992, Leary’s license to operate a motor vehicle was suspended because she had suffered an epileptic spell while driving. In August 1993, Dr. Levy wrote to Leaiy and advised her that “it would be best that she not drive” unless she adhered to a regular anti-convulsant medication program. In a February 1993, letter written to another physician apparently involved in Leaiy’s care, Levy noted a correlation between seizures Leaiy experienced while driving an automobile and low anti-convulsant levels in her bloodstream. Dr. Levy prescribed anti-convulsant medication for Leaiy and that prescription was in effect on the date of the accident.[1]
Leary’s seizures were characterized by “brief episodes of loss of awareness and some minor motor activity.” The seizures iypically lasted 1-2 minutes and, after they concluded, Leaiy was able to resume her normal activities.
From late November 1994 until February 1995, Leaiy was employed as a temporary worker by Manpower, Inc., and worked at the office of defendant, NYNEX Mobile, Inc. (“NYNEX”) in Unicorn Park, Woburn. Leary was part of a team of temporary workers involved in a project to assign personal identification numbers to cellular phone users. Leary, who by the time she started work at NYNEX, had regained her driver’s license, drove herself to and from work each work day.
When Leaiy first reported for work at NYNEX, her supervisor was Janna DeLuca (“DeLuca”). Beginning in the first week of January 1995, defendant Edward Minichello (“Minichello") assumed supervisory responsibilities over her. NYNEX employed both DeLuca and Minichello. Leary told both DeLuca and Minichello that she would from time to time suddenly and unexpectedly suffer epileptic seizures. She also told them that a sure sign of a seizure’s onset would be for her to light a cigarette while at her desk.
On January 24, 1995, at about 5:00 PM, Peruffo, one of Leary’s co-workers, saw Leary smoking a cigarette near her desk while Leary was talking with another employee. Leary also had told Peruffo that cigarette smoking at work was a sign that Leaiy was experiencing a seizure.[2] Peruffo approached Leary and asked her for the cigarette. Leary gave the cigarette to Peruffo. As she did so, Peruffo noticed that Leaiy was “very flushed and pale.” Based on her observations and what Leary had told her regarding the relationship between smoking and seizures, Peruffo concluded that Leary "wasn’t acting right.” Accordingly, Peruffo went to Minichello and told him that “there [was] something wrong” with Leary and that Peruffo did not think that Leaiy would be able to drive her car home. Accordingly, Peruffo offered to drive Leaiy home if Minichello would allow Leary to leave work at 5:00 PM, one hour early. In response, Minichello said “Don’t worry about her. If I have to give her a ride home or put her in a taxicab, [I will] make sure she [gets] home okay.”
After that conversation, Minichello went to Leaiy’s desk. Although Leaiy was not then smoking, she had a pack of cigarettes on her desk. Minichello asked Leaiy if she had been smoking and Leaiy said no. Minichello asked about the cigarette pack and Leary said that she might have had one of her “spells.” Minichello asked if Leaiy were all right and Leaiy responded that she was fine and had medication for her epilepsy. Minichello then asked Leary if she wanted to go home. Leaiy said no and the conversation ended. Minichello made no report to his supervisor either with respect to Peruffo’s observations or regarding his own conversation with Leaiy.
Peruffo left the NYNEX facility at her normal departure time of 5:00 PM without telling Leaiy of her conversation with Minichello and without telling Leaiy either that she thought Leary had suffered a seizure or that she thought Leaiy should not drive home. Peruffo did not ask any co-workers to keep an eye on Leaiy. In her actions and decisions, Peruffo relied on Minichello’s statement that he would see to it that Leary got home “OK.”
Leaiy stayed at work until 6:00 PM. No one told Leaiy before she left that he or she thought that Leary had had a seizure or that anyone had agreed to make certain that Leaiy got home safely. At approximately 6:30 PM, while driving home, Leary’s automobile veered off of Route 128 in the Peabody area, struck a sign and ultimately rolled over. Leary was alone in the automobile at the time and does not know how or why the accident occurred. Leary was injured in the accident. Blood samples taken in the course of treating her in the accident’s aftermath established that her anti-convulsant medication levels were low at the time the accident occurred. The accident occurred as a consequence of the seizure Leary experienced while at work. Leaiy first learned of the conversation between Peruffo and Minichello the day after the accident happened.
APPLICABLE LAW
Until recently, the principles governing summary judgment in Massachusetts were those the Supreme Judicial Court had articulated in Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Under those principles,
[t]he party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he [or she] would have no burden on an issue if the case were to go to trial. . . If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and, allege specific facts which would establish the existence of a genuine issue of material *631 fact in order to defeat a motion for summary judgment. (Footnote omitted.)
In the recent case of Kourouvacilis v. General Motors Corp., 410 Mass. 706 (1991), however, the Court embraced the principles set forth by the Supreme Court of the United States in Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Under those principles,
a party who moves for summary judgment has the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial.[3] That burden is not sustained by the mere filing of the summary judgment motion or by the filing of a motion together with a statement that the other party has produced no evidence that would prove a particular necessary element of this case. The motion must be supported by one or more of the materials listed in rule 56(c) and, although that supporting material need not negate, that is, disprove, an essential element of the claim of the party on whom the burden of proof at trial will rest, it must demonstrate that proof of that element at trial is unlikely to he forthcoming.
Kourouvacilis, supra, 410 Mass. at 714. As a consequence, there are now two ways in which the party moving for summary judgment may meet the burden imposed by Mass.R.Civ.P. 56. The first of those follows traditional Massachusetts law:
[T]he moving party may submit affirmative evidence that negates an essential element of the nonmoving party’s claim.
Kourouvacilis, supra, 410 Mass. at 715 quoting Celotex Corp. v. Catrett, supra, 477 U.S. at 331-32 (Brennan, J., dissenting). Second, however,
the moving party may demonstrate to the court that the nonmoving parly’s evidence is insufficient to establish an essential element of the nonmoving party’s claim ... If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law . . . Plainly, a conclusoiy assertion that the non-moving party has no evidence is insufficient . . . Such a “burden” of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment . . . Rather, ... a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.

Id.

Put another way,
a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he [or she] demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other parly’s claim.
Kourouvacilis, supra, 410 Mass. at 716.
In applying that standard,
[w]here a moving party properly asserts that there is no genuine issue of material fact, “the judge must ask himself [or herself] not whether he [or she] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A judge’s mere belief that the movant is more likely to prevail at trial is not a sufficient basis for granting summary judgment.
Flesner v. Technical Commnications Corp., 410 Mass. 805, 809 (1991).
Those, then, are the principles the Court must apply to the motion defendants have filed here.
DISCUSSION
A. THE NEGLIGENCE CLAIM
Leary's first claim is that Minichello negligently failed to follow through on his assurance to Peruffo that he would see that Leaiy got home safely and that her accident occurred as a result.
No one has a general duty or obligation to be a Good Samaritan. An individual who acts negligently is liable to a person forseeably injured by that individual’s negligent conduct. But the law has “traditionally been said to find no duty” where the “peril to the plaintiff has come from a source in no way connected with defendant’s conduct or enterprises or undertakings past or present even where the defendant has it in his power by taking some reasonable precaution to remove the peril.” Harper, James & Gray, 3 Law of Torts §18.6, at 718 (1986). See also O’Keefe v. W.J. Barry Co., 311 Mass. 517, 519-20 (1942).
There are, however, exceptions to that broad rule of nonliability. The exception of greatest importance here is found in Restatement (Second) Torts §324A which provides that:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
(a) his failure to exercise reasonable care increases the risk of such harm, or;
(b) he has undertaken to perform a duty owed by the other to the third person, or;
*632 (c) the harm is suffered because of reliance of the other or third person upon the undertaking.
The principle set out in the Restatement has been applied in various contexts. In Dudley v. Victor Lynn Lines, Inc., 138 A.2d 53 (N.J. App.Div. 1958), rev’d on other grounds, 161 A.2d 479 (1960), for example, Dudley, a truck driver for Victor Lynn Lines, fell ill while out driving on a job. He called his wife and asked her to call her brother to pick him up. Mrs. Dudley, unable to contact her brother, called Dudley’s supervisor and advised him that Dudley was ill. The supervisor told Mrs. Dudley that he would send out help and would get Dudley a doctor. The supervisor sent out a relief driver, but failed to summon a doctor. A few hours later, Dudley died from a heart attack. The trial court dismissed Mrs. Dudley’s subsequent wrongful death action, but the intermediate appellate court reversed, citing §323 of the first Restatement[4] In the court's view, “If [the supervisor’s] assurance that he would get a doctor should be taken as an indication of his knowledge with respect to the seriousness of the decedent’s condition . .. the matter ought to have been submitted to the jury on the question of whether defendant acted reasonably after assuming a duty to render aid.” Dudley, 138 A.2d at 60.
On further appeal, the Supreme Court of New Jersey reversed on the grounds that the suit was barred by restrictions flowing from the New Jersey workers’ compensation scheme. But the Court otherwise approved of the appellate division’s analysis of liability:
The reasoning we have used [in other situations] applies with equal force to a case where a superior employee or fellow worker gratuitously assumes to render or procure aid, and negligently fails to do so. If, as is alleged here, [Dudley’s supervisor] did assume that function even if he were under no duty to do so, he also assumed the obligation of using due caire for Dudley’s safety and welfare. ... If, by his assumption to act and subsequent negligent failure to do so, [the supervisor] contributed to Dudley’s death, he breached a duty imposed by the common law.
Dudley, 161 A.2d at 488. Accord, e.g., S. Pacific Co. v. Hendricks, 339 P.2d 731, 733 (Ariz. 1959); Donald v. Garry, 97 Cal.Rptr. 191, 192 (Cal. App. 1971) (citing §324A); Brown v. MacPherson’s, Inc., 545 P.2d 13, 18 (Wash. 1975) (citing §323). Cf. Fair v. United States, 234 F.2d 288 (5th Cir. 1956).
The principle embodied in §323 also has been applied in this Commonwealth. In Thorson v. Mandell, 402 Mass. 744, 748 (1988), the Supreme Judicial Court, citing §323, held that “[i]f a person voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking.” See also Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 367-68 (1997) (citing §324A); Parent v. Stone & Webster Engineering Corp., 408 Mass. 108, 113-114 (1990) (citing §324A); Mullins v. Pine Manor College, 389 Mass. 47, 52-53 (1983) (citing §323).
Minichello does not dispute that, subsequent to an exchange with Peruffo, he went to see Leary. For the purposes of this motion, defendants also agree that Minichello assured Peruffo that he would render services to Leary and entered into performance of that assumed obligation. Nevertheless, defendants say, there is no liabilfly here because Leaiy, after 20 years of living with her condition, surely was in a better position than was Minichello to know whether she needed help and, from that better position told him that she was “fine,” did not need to leave work early and could drive herself home. That was all, defendants argue, one reasonably could expect Minichello to do. See generally Mulvihill v. Union Oil Co., 859 P.2d 1310, 1313-14 & n.4 (Alaska 1993). Imposition of an obligation on Minichello, and others in his position, to somehow override the judgment of the person allegedly in need of help under pain of civil liability for the consequences of their failure to do so would, in defendants’ view, be unreasonable.[5]
There is much to what defendants say. At this point, however, defendants bear the initial burden of showing the absence of any genuine issue of material fact including the absence of any genuine issue of material fact on the question whether Leary, notwithstanding her long familiarity with the effects of her own epilepsy, was at the time of her conversation with Minichello in a position to assess accurately her own condition and need for help and, if the answer to that question is no, whether a reasonable person in Minichello’s position would have recognized that. Those questions remain because Peruffo told Minichello that Leary wasn’t acting right and that Peruffo did not believe that Leary was in a condition to drive herself home. Minichello had prior knowledge that Leary was subject to epileptic seizures and had learned from Leary herself that there was a high correlation between her smoking indoors and her seizures. When Minichello went to see her, Leary told him that she may have suffered a “spell” moments earlier. Minichello knew that he did not know how long the effects of Leary’s seizures lasted or about the speed with which Leary fully regained all of her faculties after a seizure ended. To be sure, Minichello is not a doctor and was less informed about epilepsy than was Leary. But given his lay status, Minichello had no idea if he could and should rely on statements made by an epileptic shortly after she suffered a seizure, and, notwithstanding his undertaking, did not inform his supervisor of the incident, or otherwise seek advice, before allowing Leary to remain at work and to drive herself home.
Accordingly, although defendant’s claims are substantial and although the facts of the case are close to the line that, as a matter of law, separates liability from *633 absolution, genuine issues of material fact remain and require a trial.
B. THIRD-PARTY BENEFICIARY
In addition to arguing that defendants are liable in tort for the injuries she suffered in the accident, Leary argues that they are liable to her in contract as well. In that regard, Leary claims that she is the third-party beneficiary of a contract between Minichello and Peruffo under which Minichello agreed to see to it that Leary got home safely.
An individual may recover as a third-party beneficiary of a contract if the parties to a contract intended to give her the benefit of the promised performance. Anderson v. Fox Hill Village Homeowners Corp., supra, 424 Mass. at 366; Rae v. Air Speed, Inc., 386 Mass. 187, 195 (1982); Restatement (Second) Contracts, §302. Likewise, the third-party beneficiary of a contract may recover for personal injuries occasioned by a contractual breach. St. Charles v. Kender, 38 Mass. App. Ct. 155, 157-58 (1995).
No contract, however, was created between Minichello and Peruffo. Neither Peruffo’s statements to Minichello nor Minichello’s statement to Peruffo were supported by any consideration. Indeed, Leary does not argue to the contrary. Accordingly, Minichello’s statement at most constituted a gratuitous, unenforceable promise. Graphic Arts Finishers, Inc. v. Boston Redevelopment Authority, 357 Mass. 40, 42-43 (1970); V. & F. W. Filoon Co. v. Whittaker Corp., 12 Mass.App.Ct. 932, 932-33 (1981).
To be sure, there are circumstances in which a promise will be enforced even in the absence of consideration. See, e.g., Rhode Island Hospital Trust National Bank v. Varadian, 419 Mass. 841, 848 (1995). Enforcement of such promises, however, requires, among other things, detrimental reliance on the promise by the person who seeks its enforcement. Id. Although neither side has cited any case dealing with the point, a third party conceivably may be entitled to enforce such a promise but only if the third party himself or herself relied on it. See generally Mittleman Properties v. Bank of California, N.A., 886 P.2d 1061, 1067 (Or. App. 1994); Restatement (Second) of Contracts §90, comment c (1979). In this case, Leary did not learn of Minichello’s statement until the day following her accident and thus could not possibly have relied upon it in making any of her decisions.
ORDER
In light of the foregoing, it is hereby ORDERED that Defendants’ Motion for Summary Judgment should be, and it hereby is, ALLOWED insofar as Plaintiffs claim for breach of contract is concerned and is otherwise DENIED.

It is unclear from the record, however, whether Leary had taken the prescribed doses of medication on the day the accident occurred.

On one occasion prior to January 24, 1995, Peruffo thought that Leary appeared to be confused and disoriented, but did not bring the incident to the attention of any NYNEX employee.

Kourouvacilis did not change the proposition that the moving must show the absence of any genuine issue of material fact before the non-moving party will be required to file any affidavit-based response of any kind. Smith v. Massimiano, 414 Mass. 81, 85-86 (1993).

 That Section provided as follows:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other’s person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
(a) his risk of failure to exercise such care increases the risk of such harm, or;
(b) the harm is suffered because of the other’s reliance upon the undertaking.
Section 323 parallels §324A of the second Restatement.

 An unarticulated subtext in defendants’ argument is that the obligation to do so also raises the specter of liability for efforts to force aid upon unwilling recipients who turn out not to need it.