Brassard, J.
This cause of action arises out of the plaintiff Joseph S. Ross’s (“Ross”) inability to obtain further employment within the defendant Raytheon Company (“Raytheon”) and his subsequent termination. Ross alleges that his failure to secure certain positions within Raytheon constitutes claims for age discrimination under G.L.c. 151B (Count I), age discrimination under G.L.c. 93, §§102 and 103 (CountII), breach of contract (Count III), negligent breach of contract terms (Count IV), negligent misrepresentation (Count V), and promissory estoppel (Count VI). Raytheon now moves for summary judgment on all counts pursuant to Mass.R.Civ.P. 56. For the following reasons, Raytheon’s motion for summary judgment is ALLOWED in part and DENIED in part.
BACKGROUND
Ross began working for Raytheon in 1964. He worked as a quality control engineer from 1964-1972. In 1972, Ross left Raytheon to pursue his own business venture. Ross later returned to Raytheon and was employed as a Senior Engineer of Quality Control in the Quality Assurance Départment from 1985-1987. From 1987-1990, Ross worked as a Program Manager. Beginning in 1990, Ross began work as a manager on Raytheon’s Trident Missile Program. In 1995, Ross began seeking other positions within the company because Raytheon had lost out on a contract to continue working on the Trident Missile Program. Ross alleges that Raytheon undertook efforts to help him in finding a new position from 1996-1998, and that two specific positions in Raytheon’s Quincy offices were actually offered to him. Ross further alleges that Raytheon was fully aware that he lacked an Associate’s Degree.
Ross alleges that three promises were made to him concerning positions within Raytheon in 1997. The first was a promise made by Thomas Ligón (“Ligón”), Vice President of Raytheon. Ross alleges that Ligón *28 promised to find him another job if he continued to work on the close-out of the Trident Missile contract.
The second promise involved a position at Raytheon’s Quincy plant. In early 1997, Ross alleges that Larry Potter (“Potter”) offered him the position of Program Manager. Ross alleges that Potter had full authority to offer him the position, and that the offer was contingent only on budgetary approval. Subsequently, Ross accepted the offer. Ross contends that a Bachelor’s Degree was never a requirement for the position and that Potter’s offer to him is proof of his qualifications .Ross further alleges that Potter told him in June 1997 that he could no longer hire Ross because he had to hire “a young engineer out of Bedford.”
The third promise was that Ross was offered a job as a Quality Control Engineer in Quincy in July 1997. Ross contends that a Bachelor’s Degree was not a requirement for this position and that the offer was not contingent on any further approval. He did not immediately start in this position. Ross was instead sent to Portsmouth, Rhode Island in August 1997 to work on a special project. The project ended in mid-November, and Ross returned to Quincy to inquire about the status of his job. Ross was informed that he had turned down the job offer, however Ross alleges that he never rejected the offer. In November 1997, Ross learned that a younger person had been hired for the position. Ross continued to apply for positions within Raytheon for the next year. He was not offered any further employment. In August 1998, Raytheon informed Ross that he would be terminated effective September 4, 1998.
DISCUSSION
I. Standard of Review
Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Highlands Ins. Co. v. Aerovox, Inc., 424 Mass. 226, 232 (1997). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and showing that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, 404 Mass. at 17.
II. G.L.c. 15 IB
To maintain a claim for age discrimination under G.L.c. 151B, a complaint must be filed with the Massachusetts Commission Against Discrimination (“MCAD”) “within six months after the alleged act of discrimination.” G.L.c. 151B, §5. Ross did not file his complaint with MCAD until November 1998, over a year after learning of the final act of alleged discrimination. However, the six-month statute of limitations may be tolled based on the doctrine of equitable tolling. Equitable tolling is applicable where the prospective plaintiff did not have and could not have had with due dilligence, the information to bring suit in order to assert his legal rights. Wynn & Wynn, P.C. v. Massachusetts Comm’n Against Discrimination, 431 Mass. 655, 673 (2000).
Ross does not dispute that the alleged discrimination occurred in November 1997. Therefore, without the assistance of the equitable tolling doctrine, the statute of limitations would have run in April 1998. However, Ross argues that the statute of limitations in the present case must be tolled because Raytheon not only held out the possibility of further employment within the company, but actually promised him employment. Ross contends that it would be illogical for an employee to file a complaint with the MCAD when the prospect of further employment was still a possibility. Ross urges that the filing of the complaint could have prejudiced him with respect to Raytheon’s decisions on Ross’s applications for other positions between November 1997 and November 1998.
Ross relies on the Supreme Judicial Court’s analysis in Wheatley v. American Tel & Tel. Co., 418 Mass. 394 (1994), to assert his argument based on the doctrine of equitable tolling. The central issue in Wheatley was the timing of the unequivocal discharge of the plaintiff, because the discharge itself was the subject of the age discrimination inquiry. Id. at 397. The Supreme Judicial Court held that the statute of limitations was not triggered at an earlier date because the plaintiff had not been effectively discharged at that time despite the employer’s statements that the plaintiff would be terminated if he could not find another position within the company by a later date. Id. at 398. However, in the instant case, Ross does not contend that he was terminated because of his age, but rather that he was passed over for positions in three specific instances in 1997 because of his age. Wheatley holds that the statute of limitations is only triggered by an unequivocal discharge, and that an individual is not unequivocally discharged if an employer continues to hold out the possibility of employment. Id. at 398. Wheatley does not stand for the proposition, as Ross ■argues, that an individual who is discriminated against in a specific instance can toll the limitations period because he does not want to file a complaint that might prejudice his employer against him in future endeavors. If the law were otherwise, an individual who was the victim of discrimination made unlawful by G.L.c. 15IB might choose to wait several years, until the time he parted with his employer, to file a complaint with the MCAD. That kind of delay would clearly contravene the policies which underlie the short six-month statute of limitations.
However, in a footnote in Wheatley, the Supreme Judicial Court stated:
*29 We note that McConnell v. Gen. Tel. Co. of California, 814 F.2d 1311, 1317 (9th Cir. 1987), cert. denied, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988), also treats a “termination” notice that offers the possibility of other employment within the company as tolling the limitation period. See notes 6 and 7, supra. Because we conclude that the trial judge erred in allowing [defendant’s] motion for summary judgment, we need not discuss the issue of tolling. We comment, however, that a reasonable person who has been informed that his or her employment would be terminated on a specified date if he or she did not obtain another position within the organization by that date might not file an employment discrimination claim during this “transition period” because “the filing of such a charge may prejudice any pending reconsideration of the [termination] decision.” Delaware State Coll. v. Ricks, 449 U.S. 250, 266 n. 2, 101 S.Ct. 498, 508 n. 2, 66 L.Ed.2d 431 (1980) (Stevens, J., dissenting).
Wheatley, supra, at 399 n. 8.
In McConnell, the court held that the defendant’s representations of possible future employment within the company may toll the statute of limitations under the doctrine of equitable estoppel when these representations lull the employee into an untimely filing. McConnell v. Gen. Tel Co. of California, 814 F.2d 1311, 1317 (9th Cir. 1987). Additionally, Justice Stevens’s dissent in Delaware State Coll, argued that an alleged victim of discrimination should not be required to file a complaint during the time period between notice of termination with the possibility of future employment and the actual date of termination. Delaware State Coll. v. Ricks, 449 U.S. 250, 266 (1980) (Stevens, J., dissenting). This court concludes that the period between November 1997 and September 1998 is not unreasonably long and should be considered a transition period during which the statute of limitations is tolled. In light of Ross’s continued attempts at employment within Raytheon during this transition period and the possibility that Ross may have prejudiced his employment efforts had he filed his claim with the MCAD, the limitations period should be tolled until September 4, 1998, the date of his termination. This result is consistent with the reality of the situation: if Ross had been successful in obtaining other employment with Raytheon, it is highly unlikely that he would have brought a discrimination claim. Ross filed his complaint with the MCAD in November 1998, well within the six-month statute of limitations period. Accordingly, Raytheon’s motion for summary judgment as to Count I is DENIED.
III. G.L.c. 93
To prevail on an age discrimination claim under the Massachusetts Equal Rights Act (“MERA”), G.L.c. 93, §§102 and 103, the plaintiff must also comply with the procedural requirements of G.L.c. 151B. Charland v. Muzi Motors, Inc., 417 Mass. 580, 582-83 (1994). The procedural requirements include the filing of the initial complaint with MCAD within the six-month statute of limitations period. G.L.c. 151B, §5. The purpose of this rule is to ensure that plaintiffs do not attempt to circumvent the filing requirements of G.L.c. 151B by simply filing claims under MERA. Jancey v. School Comm. of Everett, 421 Mass. 482, 498 n. 14 (1995). Ross is permitted to assert his MERA claim because, as discussed in the previous section, he has complied with the procedural requirements of G.L.c. 151B and its statute of limitations provision. As such, Raytheon’s motion for summary judgment as to Count II is DENIED.
IV. Breach of Contract
To prevail on a claim for breach of contract, the plaintiff must establish that there was a valid and enforceable contract between the parties. Lafayette Place Assoc. v. Boston Redevelopment Auth., 427 Mass. 509, 517 (1998). The court must determine whether the terms of an alleged agreement are too indefinite to constitute an enforceable contract. Id. The interpretation of a contract and whether it is legally enforceable in light of indefinite terms is a question of law for the court. Suffolk Constr. Co., Inc. v. Lanco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999).
In addition, all conditions precedent must be satisfied in order to enforce a contract. Mass. Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 45 (1991). “A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract.” Id. A contract will not be enforceable if the conditions precedent are unfulfilled. Id.
Raytheon argues that the promise made by Ligón is unenforceable. It asserts that Ligón only promised to aid Ross in finding further employment, while Ross alleges that Ligón actually promised him a position. There is a genuine issue of fact as to what was promised to Ross. However, this dispute is not material. Even if the court assumes the truth of Ross’s allegations, this agreement is still unenforceable as a matter of law. Uncertainty is not necessarily fatal to a contract’s enforceability. Lafayette Place Assoc., supra, at 517. Courts are willing to impute terms into a contract if the parties have specified formulae and procedures that can narrow any uncertainties to the point that an agreement is binding. Id at 518. However, no formula or procedure was ever decided on by Raytheon and Ross. See id. at 518 (holding that price to be paid for parcel of land was absent from the contract, but imputed by the court because the agreement had provided a pricing formula). The promise of an unspecified position on unspecified terms is too indefinite and ambiguous to be enforceable as a matter of law.
Raytheon also argues that the two promises made to Ross for specific positions in Quincy are unenforceable on two different theories. The first theory is that *30 Ross was an at will employee, and could therefore have been terminated at any time. This argument is unavailing because the issue is whether Raytheon’s failure to follow through on its offer to Ross was a breach of contract. Ross was not terminated as an at will employee in either position because he was never allowed to begin working in either of the two positions. If Ross had begun to work in one of those positions, he may well have continued to do so until the present time. The hypothetical ability of Raytheon to have terminated Ross at any point has no bearing, therefore, on the breach of contract claim that Ross has asserted.
Raytheon’s second theory is that the two promises are unenforceable because the conditions precedent were never satisfied. Raytheon argues that the offer to Ross for the position of Program Manager in Quincy was contingent on further approval. Ross alleges that the only further approval that was necessary was budgetary in nature. He argues that this condition was satisfied because the position was filled immediately. Therefore, there are genuine issues of material fact as to whether any condition precedent for the offer to become Program Manager had been satisfied. Raytheon also argues that the promise of a job as Quality Control Engineer in Quincy was contingent on further approval from the department that Ross had been working in previously. Ross argues that no such condition existed. He also asserts that the “further approval” suggested by Raytheon was merely commonplace negotiations that had to occur between the two departments in order to determine the date that his transfer would actually occur. Ross alleges that his previous department could not bar his transfer to his new position in Quincy by withholding approval. There are genuine issues of material fact as to whether the condition precedent for the offer to become Quality Control Engineer ever existed.
The promise to find Ross further employment is not enforceable as a matter of law due to the uncertainty and ambiguity of the terms. However, with respect to the two alleged promises for specific positions in Quincy, there are genuine issues of material fact as to whether the conditions precedent existed (Quality Control Engineer) or were satisfied (Program Manager). Raytheon’s motion for summary judgment on Count III is ALLOWED as to the promise made by Ligón to find Ross further employment and DENIED as to the two promises for specific positions in Quincy.
V.Negligent Breach of Contract Terms
This is not a recognized cause of action in the Commonwealth of Massachusetts. Therefore, Raytheon’s motion for summary judgment as to Count TV is ALLOWED.
VI.Negligent Misrepresentation
In order to recover for negligent misrepresentation, a plaintiff must prove that the defendant, in the course of its business, negligently supplied false information for the guidance of another, causing pecuniary loss to the other by his justifiable reliance upon the information. Fox v. F&J Gattozzi Corp., 41 Mass.App.Ct. 581, 587-88 (1996). In a claim for negligent misrepresentation, the plaintiff is only entitled to traditional “out of pocket” or pecuniary losses, not to the benefit of the bargain. Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982); Anzalone v. Strand, 14 Mass.App.Ct. 45, 49 (1982).
Ross needs to provide evidence that his reliance on Raytheon’s promises caused him to suffer some pecuniary loss. Raytheon argues that Ross’s submissions are devoid of evidence of any pecuniary loss that he has suffered. This court finds Raytheon’s argument persuasive. Accordingly, Raytheon’s motion for summary judgment as to Count v. is ALLOWED.
VII.Promissory Estoppel
A claim for promissory estoppel permits recovery if: 1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, 2) the promise does induce such action or forbearance, and 3) injustice can be avoided only by enforcement of the promise. Loranger Constr. Corp. v. E.F. Hauserman Co., 6 Mass.App.Ct. 152, 154 (1978). An action for promissory estoppel is analogous to a contract action. R.I. Hosp. Trust Nat’l Bank v. Varadian, 419 Mass. 841, 850 (1995). The plaintiff, in an action for promissory estoppel, must prove all the elements that would be necessary to satisfy a contract claim except for consideration. Id. Accordingly, the promise that is allegedly relied upon by the plaintiff must rise to the level of an enforceable promise in the contractual sense. Vakil v. Anesthesiology Assoc. of Taunton, Inc., 51 Mass.App.Ct. 114, 121 (2001). Therefore, the issues that need to be evaluated are whether the first promise made by Ligón was too vague and uncertain to be enforceable, and whether the conditions precedent existed and were satisfied in Raytheon’s promises to Ross for positions in Quincy. This is the same analysis set forth above concerning Ross’s breach of contract claim. The principles and arguments are identical for both claims, and thus the same conclusion must be reached. Raytheon’s motion for summary judgment on Count VI is ALLOWED as to the promise made by Ligón to find Ross further employment and DENIED as to the two promises for specific positions in Quincy.
ORDER
For the foregoing reasons, defendant’s motion for summary judgment is ALLOWED as to Counts IV and v. and ALLOWED in part as to Counts III and VI. Defendant’s motion for summary judgment is DENIED as to Counts I and II and DENIED in part as to Counts III and VI.