Josephson, J.
This matter was tried before a jury resulting in a verdict on May 9, 2002, in favor of the plaintiff, Crop Production Services, Inc. (Crop), in the amount of $14,448.25. The plaintiff moves for judgment notwithstanding the verdict in the amount of $668,163.66 which it claims it is entitled to based on the uncontroverted evidence.
BACKGROUND
The plaintiff sued the defendant to recover on the deficiency balance due under a promissory note. The parties stipulated to the facts that follow. On or about July 18, 1995, the defendant executed the promissory note and mortgage in the amount of $500,000.00 in favor of the plaintiff. The note and mortgage were to serve as security, and a further line of credit, for goods and services provided and to be provided to the defendant and his son, Benny Albert, and son-in-law, Robert E. Waryjasz, in the conduct of their various farming operations in Worthington and Plainfield, Massachusetts. The note was due and payable “on December 1, 1995 or when the defendant sells its crops harvested in Worthington, whichever occurs first.” The noted contained an interest rate of 18 percent per annum. The defendant defaulted on the note. The plaintiff sent the defendant a notice of its intention to foreclose on the property on or about April 17,1996. The defendant filed for Chapter 11 Bankruptcy protection on or about May 13, 1996. The plaintiff sought and obtained relief from the ensuing stay in order to proceed with the foreclosure sale. On or about June 18, 1997, the plaintiff conducted a foreclosure sale for the mortgaged property acquiring the property at foreclosure for the sum of $210,000.00. On or about March 3, 1999, the defendant’s Chapter 11 bankruptcy proceeding was dismissed. On June 16, 2000, the action against the defendant was commenced.
The testimonial evidence in the case consisted of testimony from the plaintiffs Area Credit Manager, Nancy R. Chase, and the testimony of the defendant, Bernard Albert. The jury was also presented with ten exhibits consisting of the note and mortgage and other documents concerning the defendant’s account with the plaintiff. Ms. Chase testified that the debt at issue originated with the purchase of goods and services by the defendant from the plaintiff in 1994 and 1995. During direct examination, Chase testified that the amounts owed were based on four accounts left due under the note as of December 1, 1995. In her direct examination, Chase testified that the balance owed by the defendant just prior to the foreclosure in May 1997 was $516,049.76, including interest, principal and late fees. To that, Ms. Chase added the taxes and attorneys fees owed, the costs of a survey, recording *98 fees, payoff of a first mortgage, for a balance owed of $592,212.34. After applying credits due the defendant, Ms. Chase testified that as of June 1997, the defendant owed a balance of $363,131.59 before the addition of interest for the years that followed. Once 18% annual interest was added, the amount owed, according to Chase, was $684,503.05. The documentary evidence independently supported the amounts testified to by Chase.
On cross examination, the defendant challenged Chase’s computations. Chase agreed that, hypothetically, if the interest for 1994 and most of 1995 were not due under the note, the balance due as of 1995 would be lower. She conceded that if certain amounts she had included in her computations had preceded the due date on the note, the interest computations based on those amounts would be lower than what was assessed. The examination then turned to the issue of attorneys fees. Those Chase had testified to were challenged on the grounds that Chase could not tell the jury what amounts were billed for work solely on the defendant’s account. The defendant also questioned Chase concerning the payment of a survey bill. On this point, Chase testified that the plaintiff would have had to have other survey work done to effectuate the transaction. In conclusion, the defendant asked whether Chase had the tax bills the plaintiff had paid after the foreclosure. Chase stated she did not. On redirect, Chase explained the computations she had testified to and referenced the promissory note’s provisions in support of her calculations.
After Chase’s testimony, the plaintiff rested. Both parties explicitly moved for a directed verdict at the conclusion of the plaintiffs case. The court denied both motions.
The defendant presented one witness as well; the defendant, Bernard Albert. Mr. Albert testified that he had been a farmer for sixty-five of his eighty years. His testimony was exceedingly brief. At one point, his testimony could be understood to be an admission that in December 1995 he owed the plaintiff about $360,000. However, later on redirect, he denied that he owed the plaintiff any money at all.
On the second morning of the trial, prior to the defendant formally resting and before the jury was brought into the courtroom, I discussed with counsel on the record the issues to be submitted to the jury and the instructions to be given. Both attorneys indicated that they intended to rest without presenting further evidence. During the course of that discussion, in response to a remark that I made concerning the paucity of issues to go the jury, plaintiffs counsel stated, “I contemplated moving for a directed verdict prior to the juiy being brought back in, my theory was just as you say that they sat through this and that it should go to them... and the theory being that if they were somehow to come back at a verdict at less than what I’m asking for I would move then for a judgment [notwithstanding] the verdict on the status of the law.” The charge conference having been conducted just moments before, counsel immediately began closing arguments.
The issues discussed during this exchange centered on the sufficiency of evidence as a matter of law. At the conclusion of the exchange, the jury was brought into the courtroom, the defense rested, and the plaintiff also rested after marking a chalk as an exhibit.
DISCUSSION

Procedural Issues

Mass.R.Civ.P. 50(b) states, in relevant part, that a motion for judgment notwithstanding the verdict must request “judgment in accordance with [the moving party’s] motion for a directed verdict.” In order to move for judgment notwithstanding the verdict, the moving party must have moved for a directed verdict at the close of all of the evidence. Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 34 (1991). The test for granting a motion for judgment notwithstanding the verdict is the same as that for granting a directed verdict. D’Annolfo v. Stoneham Hous. Auth., 375 Mass. 650, 657 (1978). The court must consider whether “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn” in favor of the non-moving party. Poirier v. Plymouth, 374 Mass. 206, 212 (1978). “The inferences to be drawn from the evidence must be based on probabilities rather than possibilities and cannot be the result of mere speculation and conjecture.” McEvoy Travel Bureau, Inc. v. Norton, Co., 408 Mass. 704, 706-07 n.3 (1990).
A failure to renew the motion after the parties have rested is not in certain circumstances fatal to a motion under 50(b). For example, in Continental Assurance Co. v. Diorio-Volungis, 51 Mass.App.Ct. 403, 404-05 n.3 (2001), the defendant made a clear and unambiguous motion for directed verdict at sidebar conference after both parties indicated intentions to rest. The court found defendant’s motion sufficient under 50(b), despite failure to renew the motion after the parties rested in open court.
The facts of this case are not dissimilar to those in Rhode Island Hosp. Trust Nat’l Bank v. Varadian, 419 Mass. 841 (1995). In that case, the plaintiff, defendant in the claim at issue, moved for a directed verdict at the close of the defendant’s evidence, “setting forth specific grounds therefore.” Id. at 844. The plaintiff did not move for a directed verdict at the close of all evidence. However, during a sidebar conversation regarding jury instructions, the plaintiff “stated that he wanted to renew his motion for directed verdict.” The judge simply responded, “Thankyou.” Id. After the jury returned the verdict, the' plaintiff moved for a judgment notwithstanding the verdict. The court held that the plaintiffs statement, construed as a renewal of its *99 earlier motion, satisfied the purpose of Mass.R.Civ.P. 50(b), as it “fairly brought to the attention of the judge and opposing parties the grounds of the renewed motion.” Id. at 847. In addition, the court found there to be no suggestion that “either the judge or any defendant was, in effect, ‘ambushed’ by learning of the [plaintiffs] contentions as to the sufficiency for evidence for the first time after the verdict.” Id.
Under the unique circumstances of this case, plaintiffs counsel’s comment to the court that he “contemplated moving for directed verdict” is sufficient to meet the requirements of Mass.R.Civ.P. 50(b). While the comment could be interpreted as conveying the attorney’s decision not to move for directed verdict, it also was an expression of counsel’s recognition of the court’s apparent decision to let the case go to the jury and was made in context of a discussion about the sufficiency of evidence at the close of the evidence. At the time that the comment at issue was made, the jury was about to return to the courtroom and the defendant was expected to formally rest. Both counsel indicated that they had no further evidence to present. See Varadian, 419 Mass, at 847; Bonofiglio, 411 Mass at 34. In the interests of moving the case forward without unnecessarily having the jury file in and out of the courtroom, the attorneys and the court engaged in a discussion intended to address any remaining issues before the evidence was closed before the jury and counsel gave their closing arguments. The requirement that the motion be made at the close of all the evidence allows the non-moving party to seek an opportunity from the judge “to present the evidence asserted to be fatally missing,” before the case goes to the jury. Varadian, 419 Mass, at 847. Here, the defendant had that opportunity. Given the tenor, timing and content of the discussion, the conversation was sufficient to prevent “either the judge or [the] defendant [being], in effect, ‘ambushed’ by learning of the [plaintiffs] contentions as to sufficiency of evidence for the first time after verdict.” Id. at 847. Accordingly, the plaintiffs colloquy with the court at the close of the evidence qualifies as a renewal of its previous motion for directed verdict, thus preserving the plaintiffs right to move for judgment notwithstanding the verdict.

Substantive Issues

In considering a motion for judgment notwithstanding the verdict, the court must “tak[e] into account all the evidence in its aspect most favorable to [the non-moving party] . . . [and] determine whether, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, the jury reasonably could return a verdict for the [nonmoving party].” Tosti v. Ayik, 394 Mass. 482, 494 (1985). The evidence before the jury consisted of the stipulations, the exhibits, Chase’s challenged computations and Albert’s flat denial of owing any money at all to the plaintiff. Here, viewing the evidence in the light most favorable to the defendant, the defendant admitted during the trial that he owed “about $360,00.00.” Therefore, if the testimonial evidence is judged in the most favorable light to the defendant, the $360,635.00 testified to is the amount admitted owed by the defendant. Even without interest charges, costs, and attorneys fees, the total owed under the note is $131,554.25 after the foreclosure amount and other credits and payments. In view of this, the jury’s verdict of $14,448.25 is contrary to the evidence and wholly unsupported by the evidence in the case.
However, even without the defendant’s admission, the terms of the note speak for themselves and must be interpreted as a matter of law. Moreover, the jury could not simply choose to ignore the stipulations and contractual provisions agreed to under the note. The note is clear in its terms that the defendant will be liable for interest, attorneys fees, and the costs of collection. Despite his protestation in his testimony that he owes “zero,” in essence, the defendant does not argue that he does not owe these costs; he simply argues that Crop improperly calculated the interest charges, that there is insufficient proof of the alleged costs of collection, and that Crop improperly included attorneys fees for unrelated work. Even assuming the defendant is entitled to challenge before a jury the computation of the interest and the amounts of collection rather than the contractual obligation to pay them, the jury was not presented with sufficient evidence to find in the defendant’s favor on the calculation of interest. Those amounts due and owing under the terms of the contract are not subject to interpretation by the jury. At trial, the documentary evidence establishing the principal balance at $360,635.00 was essentially uncontroverted. The defendant stipulated that the note contained an interest rate of 18% per year and that the property was sold for $210,00.00 at foreclosure. The defendant argues that the plaintiffs evidence was confusing, if not contradictory, concerning how to compute and assess interest due under the note. Accordingly, the defendant maintains that the jury could have reasonably denied any or all of the interest assessed in the years 1994, 1995, 1996, and 1997. However, even in the light most favorable to the defendant, the evidence did not permit a rational jury to disregard some or all the interest for those years. The cross-examination of Chase, while attempting to demonstrate that the plaintiff had charged interest before it was entitled to do so, did not diminish the evidence that the defendant signed the note and owed the amount claimed under it. While the jury was entitled to determine the contested amounts assessed, it overstepped its function in reducing the amount clearly obligated under the note as a matter of law.
The burden of proving the reasonableness of the attorneys fees is on the plaintiff. Here, in the light most favorable to the defendant, it failed to do so. The defendant challenged the attorneys fees as overcharged by the inclusion of fees for work on unrelated *100 issues. Whether the fees were reasonable and related to the work done is a factual matter for the jury to determine. Viewing the evidence in the light most favorable to the defendant, the defendant owes the amounts calculated under the promissory note, including 3% late fees, and the interest charges assessed through 2002, as well as the excise tax of $1,015.60. Accordingly, considering the evidence in the light most favorable to the defendant, the amount owing and due to the plaintiff from the defendant under the promissory note is $635,215.12.
ORDER
For the foregoing reasons, the plaintiffs motion for judgment notwithstanding the verdict is ALLOWED. Judgment is to enter for the plaintiff in the amount of $635,215.12.