NANCY ANN MATLEY[1] *vs*. KENNETH MINKOFF.

No. 05-P-885.

Middlesex. May 16, 2006. - January 8, 2007.

Present: PERRETTA, DREBEN, & VUONO, JJ.

*Medical Malpractice,* Consent to medical treatment. *Negligence,* Medical malpractice. *Practice, Civil,* Waiver, Judgment notwithstanding verdict.

A Superior Court judge erred in granting judgment notwithstanding the verdict (judgment n.o.v.) to the defendant in a medical malpractice case on the is-sue of failure to obtain informed consent for a particular course of treat-ment of a mentally retarded adult patient (plaintiff), where the defendant's motion for a directed verdict failed to specify the grounds upon which judgment n.o.v. was granted (namely, that the defendant had no duty to obtain either the plaintiff's or her parents' informed consent because there was no judicial determination of the plaintiff's substituted judgment), and therefore, those grounds were waived [51-54]; moreover, this court reinstated the jury's verdict in the plaintiff's favor, where the defendant failed to object to the plaintiff's theory of liability and thereby waived any rights to argue that he had no duty to obtain the plaintiff's parents' consent to the treatment [54-55].

CIVIL ACTION commenced in the Superior Court Department on February 6, 1991.

The case was tried before *Kenneth J. Fishman,* J., and a mo-tion for judgment notwithstanding the verdict was heard by him.

*Robert J. Carnevale* for the plaintiff.

*Peter C. Knight* for the defendant.

VUONO, J. This appeal concerns the validity of a judge's ac-tion in allowing a motion for judgment notwithstanding the verdict (judgment n.o.v.) in a medical malpractice case. The undisputed evidence is that Nancy Matley (Nancy) was treated by the defendant, Kenneth Minkoff, for mental illness over a four-year period from May, 1984, through February, 1988.

---

[1] By her co-guardians Helen M. and Robert M. Matley.

Although Nancy was an adult at the time she commenced treatment, she suffered from mental retardation and had the conceptual level of an eight year old. As a result, Nancy's parents, with whom Nancy lives, made all treatment decisions for her.[2] During the course of Nancy's treatment, the defendant prescribed neuroleptic medications, including Thorazine. Her parents allege that the medication caused Nancy to develop a serious side effect known as tardive dystonia. This condition is marked by involuntary muscle movements. Nancy's symptoms included twitching movements, smacking of the mouth, and a gait disturbance which became so severe that she needed to use a wheelchair.

In 1991, Nancy brought this action in the Superior Court through her parents, as co-guardians, alleging that the defendant negligently prescribed the medication and negligently failed to obtain the plaintiff's informed consent for the use of the medication. The complaint also alleged breach of contract, and, in separate counts, the parents made claims for loss of consortium and emotional distress.[3] The defendant moved for a directed verdict on all counts following the plaintiff's opening statement. The judge allowed the motion as to the breach of contract and emotional distress claims and reserved his ruling on the remaining claims of negligence and informed consent.

After the plaintiff's closing argument, the defendant renewed his motion for a directed verdict on the claim of failure to obtain informed consent. The motion was prompted by statements made by plaintiff's counsel during his summation. In his closing, counsel argued that the defendant could not have obtained Nancy's informed consent because Nancy was incompetent during the time of treatment with the defendant and that the defendant had stipulated to Nancy's incompetency. Counsel further argued that since her parents did not become Nancy's legal guardians until after Nancy's treatment with the

---

[2]As discussed herein, although the Matleys acted as if, and the defendant treated the Matleys as if, they were Nancy's legal guardians, the Matleys did not obtain legal guardianship until 1989, approximately one year after treatment with the defendant had ended.

[3]Other counts not material to the issues on appeal were dismissed by agreement of the parties.

defendant had ended, the defendant could not have obtained their informed consent.

The defendant objected to counsel's remarks, which were partially incorrect (there was no such stipulation)[4] and argued that if her parents were not Nancy's legal guardians during the time that he was treating Nancy, then he had no duty to obtain the Matleys' informed consent. He further argued that since her parents had failed to present any evidence that Nancy was incompetent while she was under the care of the defendant, or that the defendant failed to obtain Nancy's informed consent for the recommended treatment, judgment should enter in his favor.

The judge sustained the objection to plaintiff's counsel's misstatements and subsequently instructed the jury that there was no stipulation concerning Nancy's incompetence during 1984 and 1985, and that the jury should disregard the argument of counsel that the parents were not Nancy's guardians and could not have provided informed consent. In denying the defendant's motion for a directed verdict, the judge ruled that throughout the trial, the parties had assumed that her parents were Nancy's guardians during the period of her treatment and it was their informed consent that had to be obtained. The judge further noted that the jury instructions and special verdict form had been prepared in a manner consistent with this theory with no objection from either party. The case was then submitted to the jury in accordance with the way it had been pleaded and tried.

The jury returned a verdict in favor of the defendant on the claims of negligence and loss of consortium and in favor of Nancy on the claim of failure to obtain informed consent.[5] Damages were awarded to Nancy in the amount of $200,000.

Thereafter, the defendant moved pursuant to Mass.R.Civ.P. 50(b), as amended, 428 Mass. 402 (1998), for a judgment n.o.v., or, in the alternative, for a new trial. He asserted three grounds in support of the motions. The first two grounds, that the record was devoid of evidence that Nancy was incompetent at the time of treatment and devoid of evidence that the defendant failed to obtain Nancy's consent, had been raised in

---

[4]The only stipulation was that Nancy was not competent to testify at trial.

[5]The parents did not appeal the jury's verdict.

the motion for a directed verdict. The third ground was based on the Supreme Judicial Court's ruling in *Guardianship of Roe*, 383 Mass. 415, 434-435 (1981), where the court ruled that if an incompetent individual requires treatment with antipsychotic drugs, "those charged with [her] protection must seek a judicial determination of substituted judgment." Therefore, before a patient may be treated with neuroleptic medications, a judge must first determine whether the patient is incompetent and, if so, what the patient would choose to do if she were competent. Although the judge raised, sua sponte, the applicability of the rule of substituted judgment during the hearing on the motion for directed verdict, the defendant did not adopt this argument at that time.[6] Only later, in support of his motion for judgment n.o.v., did the defendant rely on this rule and argue that, even assuming Nancy was incompetent and that her parents were her legal guardians, it is the court's responsibility, and not the guardians', to exercise Nancy's substituted judgment concerning consent to treatment with neuroleptic medications.

The judge allowed the motion for judgment n.o.v. and denied the motion for a new trial.[7] In ruling on the request for judgment n.o.v., the judge rejected the first two grounds asserted by the defendant and accepted the third ground. The trial judge determined that the rule of substituted judgment only required the defendant to ensure that a determination by a judge had been obtained regarding Nancy's incompetency and that that judge had then weighed the factors for a substituted judgment before treatment with neuroleptic medications. The trial judge concluded that a judgment n.o.v. was required because, although the record was clear that the defendant had "failed to seek any such determination," his failure to obtain Nancy's substituted judgment for an informed consent was never pleaded or presented to the jury.

The plaintiff appeals the judge's decision to grant judgment n.o.v. We conclude that the judge erred because the trial was

---

[6]The judge directed the parties to *Rogers* v. *Commissioner of the Dept. of Mental Health*, 390 Mass. 489, 504 (1983), that extended the rule of substituted judgment to individuals hospitalized in state mental hospitals.

[7]The denial of the motion for a new trial was not briefed and is not an issue on appeal. Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975).

conducted on the assumption that the parents were Nancy's legal guardians and the evidence was directed to the question of whether they had consented. The defendant's motion for a directed verdict, however, failed to specify the grounds upon which judgment n.o.v. was granted, namely that the defendant had no duty to obtain either Nancy's or the Matleys' informed consent because there was no judicial determination of Nancy's substituted judgment. These grounds are waived; therefore, the judgment n.o.v. must be reversed and the jury's verdict reinstated.

Judgment notwithstanding the verdict is to be granted cautiously and sparingly. *Phelan* v. *May Dept. Stores Co.*, 60 Mass. App. Ct. 843, 844 (2004), rev'd on other grounds, 443 Mass. 52 (2004). A party may not raise an issue in a motion for judgment n.o.v. that was not raised in a motion for directed verdict. *Shafir* v. *Steele*, 431 Mass. 365, 370 (2000). Smith & Zobel, Rules Practice § 50.14 (1977).[8] Motions for judgments n.o.v. are governed by rule 50(b), which states in relevant part that a motion for judgment n.o.v. must request "judgment in accordance with [the moving party's] motion for a directed verdict." Furthermore, a motion for a directed verdict according to Mass. R.Civ.P. 50(a), 365 Mass. 814 (1974), must "state the specific grounds therefor." "The requirement that a litigant state specific grounds in support of a motion for directed verdict is an important one. It allows the judge knowingly to rule on the question before him, and it allows the opposing party an opportunity to rectify any deficiencies in its case — or, more precisely, an opportunity to seek leave from the court to do so." *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass 31, 35 (1991).

As stated above, the basis upon which the defendant's motion for a judgment n.o.v. was allowed was not asserted in the motion for a directed verdict. That motion focused on the suf-

---

[8]We note that neither the plaintiff nor the defendant addressed the issue of waiver in their briefs. "While an appellate court need not consider an issue not addressed by the parties, the court is not prohibited from doing so, and 'may decide cases on issues or theories not raised.' " *Foley* v. *Lowell Sun Publishing Co.*, 404 Mass. 9, 11 (1989), quoting from *Commonwealth* v. *Elder*, 389 Mass. 743, 746 (1983). See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 919 (1975).

ficiency of the evidence as to Nancy's incompetency and the defendant's failure to obtain Nancy's informed consent.[9] Moreover, even though the judge directed the parties' attention to the rule of substituted judgment, we believe, at least under the circumstances of this case, that the plaintiff did not receive "an opportunity to rectify [the] deficienc[y] in [the] case." *Ibid.* The judge wisely decided to submit the case to the jury as it had been pleaded and tried with no objection. After the jury's verdict was returned, the plaintiff was "ambushed" by the defendant's contention that the rule of substituted judgment precluded recovery. See *Rhode Island Hosp. Trust Natl. Bank* v. *Varadian,* 419 Mass. 841, 846-848 (1995), quoting from *Quinn* v. *Southwest Wood Prod., Inc.,* 597 F.2d 1018, 1025 (5th Cir. 1979). In *Varadian,* the court pointed out that "rule [50(b)] is one of fairness, and the interest of fairness is met by construing the requirement of rule 50(b) that a motion for directed verdict be made 'at the close of all the evidence' as meaning that the motion must be made before the jury begins deliberations and, therefore, at a time when the trial judge may still permit the opponent to present further evidence." *Id.* at 847. We note, for example, that the complaint could properly have been amended under Mass.R.Civ.P. 15(b), 365 Mass. 761-762 (1974), to allege and prove a breach of the duty to obtain a judicial determination of Nancy's substituted judgment for an informed consent. Although the theory of recovery would have been different, most of the evidence would have been the same. Moreover, in

---

[9]These arguments, however, were properly rejected by the judge as a basis for a directed verdict motion. The defendant never disputed Nancy's inability to make any medical decisions for herself. The defendant testified that, in weighing the risks and benefits of the respective medications:

"[I]t's very important to include the family in that kind of conversation in this situation because they're the ones that really bear the brunt of difficulty if Nancy starts to get worse when she's at home. And also, Nancy isn't able to — wasn't able to make, you know, medication decisions on her own. Her family was the guardians to make those decisions for her."

As the judge noted: "Clearly, Dr. Minkoff had made his own assessment, at least by June, 1984, that Nancy was incompetent for the purposes of consenting to this treatment." In short, due to Nancy's mental retardation, the defendant made no attempt to address treatment issues with her.

the view of the judge, the verdict would have been unchanged. The judge reasoned:

> "Given that the jury found that the risks which were undisclosed to the Matleys were the legal cause of Nancy's injuries, it is reasonable to conclude that the same jury would have found for the plaintiff on the question of causation if it were a court rather than the Matleys to whom the defendant had failed to disclose risks and obtain consent for treatment. There is also no basis to conclude that the jury would have answered the question of the proper level of damages any differently."

Having decided that the judgment n.o.v. should not have been granted, we now address the jury's verdict in favor of Nancy and conclude that the verdict should be reinstated. In reaching this conclusion, we consider the applicable principles of waiver that are also reflected in Mass.R.Civ.P. 50(a) and (b).

The nature of the plaintiff's complaint was that the defendant was liable for failing to inform Nancy's parents of the risks associated with the proposed treatment.[10] This case has been pending since 1991 and involved treatment between 1984 and 1988. The defendant never once objected to the plaintiff's theory of liability until after closing arguments.[11] "An issue which is open on the pleadings may be expressly waived during trial or impliedly waived by the manner in which the trial is conducted. 'There is nothing to prevent a party defendant from waiving a defence. Such waiver by conduct at the time when it ought to

---

[10]The defendant correctly notes that the complaint improperly refers to Nancy as a "minor." However, given that the defendant testified that Nancy was eighteen years old and no longer a minor when he first began to treat her, we do not believe that the error was in any way misleading.

[11]The judge noted: "During pretrial arguments on the defendant's motion in limine relating to the informed consent issue, the defendant focused on the discussions had between Dr. Minkoff and the Matleys. In opening statements, counsel for the plaintiff addressed the claim as a failure to obtain informed consent from Nancy's parents, while the defendant's attorney maintained that Dr. Minkoff had discussed the risks associated with the neuroleptic medications with Nancy's parents. The direct and cross examinations of Helen Matley, and . . . of the experts for the plaintiff and the defendant, related to discussions between the Matleys and Dr. Minkoff regarding the risks of medication."

have been pressed does not enable a defendant as of right to set up such defence at a later stage, no matter how perfect that defence might have been if it had been seasonably put forward.' " *Dalton* v. *Post Publishing Co.*, 328 Mass. 595, 599 (1952), quoting from *Lonergan* v. *American Ry. Express Co.*, 250 Mass. 30, 40 (1924). See *Mirageas* v. *Massachusetts Bay Transp. Authy.*, 391 Mass. 815, 818 (1984).

The result is that the defendant waived any rights to argue that he had no duty to obtain the Matleys' informed consent before prescribing neuroleptic medications for Nancy. After examining the record with care, we are satisfied, as was the judge below, that there was sufficient evidence to warrant a verdict for Nancy.[12] Accordingly, the judge's order granting judgment n.o.v. is reversed, and the jury's verdict awarding damages to Nancy is reinstated. Judgment is to enter for the plaintiff consistent with the jury verdict.

*So ordered.*

---

[12]The judge stated: "To the extent that the motions before this Court raise issues of whether there was sufficient evidence of Nancy's incompetence before the jury, and, if so, whether there was evidence to support the jury's verdict that Dr. Minkoff had failed to obtain the Matleys' informed consent, this Court finds that both questions must be answered in the affirmative."