NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-919                                       Appeals Court

        MARIE D. BRISSETTE  vs.  EDWARD J. RYAN, JR., & another.[1]


                          No. 14-P-919.

        Hampden.     December 8, 2014. - October 29, 2015.

            Present:  Rubin, Milkey, & Sullivan, JJ.


Practice, Civil, Judgment notwithstanding verdict.  Negligence,
     Attorney at law.  Attorney at law, Malpractice.  Real
     Property, Life estate.


     Civil action commenced in the Superior Court Department on
September 7, 2010.

     The case was tried before Edward J. McDonough, Jr., J., and
a motion for judgment notwithstanding the verdict was heard by
him.


     Roger J. Brunelle for the plaintiff.
     Richard L. Neumeier for the defendants.


     RUBIN, J.  After a Superior Court trial in this legal

malpractice case, a jury found that the primary defendant,

Edward J. Ryan, Jr., was negligent in his representation of the

plaintiff, Marie D. Brissette, and awarded damages to her in the

_____

        [1] The law firm of Ryan, Boudreau, Randall, Kirkpatrick &
Baker, LLP.

amount of $100,000 against Ryan and his law firm, Ryan, Boudreau, Randall, Kirkpatrick & Baker, LLP (law firm) (collectively, defendants).[2]  The defendants filed a motion for judgment notwithstanding the verdict (n.o.v.) which was allowed by the trial judge, who ordered judgment to enter for the defendants.  Marie[3] has appealed.  We reverse, and order reinstatement of the verdict in favor of Marie.

1.  Facts.  Viewing the evidence in the light most favorable to Marie, the jury could have found the following facts.  See Haddad v. Wal-Mart Stores, Inc. (No. 1), 455 Mass. 91, 94 n.5 (2009).  In 1994, Marie and her husband Robert (collectively, Brissettes), consulted Ryan for advice about how to protect their home in South Hadley from Medicaid[4] liens in the event that either needed long-term care.  Ryan advised them that they could transfer the title to their property to their four adult children with reserved life estates to protect themselves from Medicaid liens.  He advised them that transferring title

---

[2] The parties stipulated that the law firm, the limited liability partnership at which Ryan was practicing at the time of the alleged malpractice, was vicariously liable for any negligence on Ryan's part.

[3] Because several parties share the same surname, we use their first names to avoid confusion.

[4] At trial, and in this opinion, the references to the rules and regulations of the Federal Medicaid program incorporate the rules and regulations of MassHealth, the State-provided health insurance program.

for less than adequate consideration would have a negative impact on them if they applied for Medicaid within three years. The Brissettes followed this advice, transferring the property to their children and reserving life estates for themselves. Their children signed a deed transferring the house back to them, which Ryan held in escrow, to be kept there until the Brissettes wanted to sell the South Hadley house.

Thirteen years later, in July of 2007, the Brissettes and two of their four children, Paul Brissette and Cynthia Parenteau, met at Ryan's office to discuss the Brissettes' desires to sell the South Hadley home and to buy property located in Springfield. They discussed the prospect of putting the Springfield property in the names of Paul and Cynthia. Ryan told the Brissettes that if they reserved life estates in the Springfield property, they could be ineligible for Medicaid if they applied any time within five years of getting the life estates. He also told them that if they took life estates in the Springfield property, there could be a Medicaid lien against that property when they died. There was evidence that the Brissettes asked about "protection," but Ryan told them that he did not feel that the Brissettes needed protection because they could trust their children to do what they wanted them to do. In reliance on Ryan's advice, the Brissettes decided that the Springfield property would be bought with their money but put in

Paul's and Cynthia's names, and that the Brissettes would not have life estates in the Springfield house.

The jury could have found, as Ryan conceded at trial, that Ryan's advice was wrong both about ineligibility for Medicaid and about the possibility of a posthumous Medicaid lien against the property had the Brissettes reserved life estates in the Springfield property.  An expert witness testified that not only was Ryan's advice wrong, but that it was below the standard of care applicable to the average qualified attorney advising clients on Medicaid planning.  The jury also could have found based on the expert's testimony that it would have been possible to structure the transaction using a testamentary power of appointment which would have given the Brissettes the right to change the remaindermen and which would have provided them with leverage over Paul and Cynthia.  We express no opinion on the merits of the advice given by Ryan, which is not at issue in this appeal, nor on the merits of the expert's proffered advice on Medicaid planning.  There was evidence both in the form of concessions by Ryan and in the form of expert testimony that his advice was wrong.

Paul took out a loan on his own house to finance the purchase of the Springfield house; the Springfield house deed was taken in Paul's and Cynthia's names as joint tenants on August 14, 2007.  Ryan released the deed that transferred the

South Hadley property back to the Brissettes.  The Brissettes then sold the South Hadley home, and on September 14, 2007, used the proceeds to reimburse Paul (with interest) for his purchase of the Springfield house in the amount of $193,476.  Due to Ryan's advice, the Brissettes did not take out life estates, receiving, in Marie's words, "absolutely nothing" in return for $193,000 (without the interest).

The next year, Robert passed away.  Marie concluded that she wished to own the Springfield house in her own name.  Paul and Cynthia declined to transfer the house to Marie.

Marie, of course, does not have a life estate in the Springfield property.  In 2010, Cynthia transferred her interest in the property to a revocable trust of which she was the trustee.  The trust contains a provision stating, "Marie D. Brissette shall have the opportunity to reside in the subject premises owned by this Trust for as long as she so desires."  It also provides that "[i]n the event that Marie D. Brissette should choose to no longer reside in the subject premises, and the premises are sold, then the Trustee shall not be required to provide distributions to Marie D. Brissette."  The trustee, however, may amend the trust at any time.

As to Paul, although he declined to transfer his interest to Marie, sometime in June of 2013 he executed a series of documents the benefit of which he offered to Marie.  These

documents purported to offer her the right to live in the house but not the right to sell, lease, or mortgage it for interest, and the documents also provided that her rights would be forfeited if she failed to live in the house for three consecutive months, or for 180 days in any calendar year. A life estate, of course, includes far more than what Paul offered, which was essentially a conditional right to live on the premises.[5]

At trial, Marie's theory of damages was that, but for Ryan's negligence, she would have obtained a life estate for the $193,000 that she and Robert paid to Paul. Instead of a life estate, she argued, she had no legally cognizable interest, which subjected her to the risk of being forced to move out of the house by Paul and Cynthia, or by anyone who succeeded their interests, such as a judgment creditor or a buyer. Unlike one with a life estate, Marie did not have the ability to rent the house, or to apply for an equity loan. Finally, she argued that, although she would have been able to do so if she held a life estate, she had no power to change the disposition of the

---

[5] "The owner of a possessory life estate, i.e., the life tenant, has a right to the exclusive possession of the land. And if a remainder interest has been created, during the existence of the life estate the remainderman is not entitled to possession until the death of the life tenant. A life estate is alienable by the life tenant, and he can accordingly convey his estate to a third person, or mortgage it, or lease it for a term of years." Hershman-Tcherepnin v. Tcherepnin, 452 Mass. 77, 88 n.20 (2008) (citations omitted).

Springfield house when she died.  The jury found Ryan[6] liable and set damages at $100,000.

    2.  Judgment n.o.v. motion.  The defendants moved for judgment n.o.v., arguing that Ryan's negligence did not cause Marie any actionable harm.  The judge agreed, concluding that Marie had submitted "no proof of actual damages" as a result of Ryan's negligence.  The judge noted that Paul and Cynthia both testified that each never would evict Marie, which, the judge reasoned, "estops both from taking the opposite position in a later legal proceeding," a question we need not decide.  The judge noted that while the jury could have found that Marie's residency at the property was subject to certain terms, she has not "provided any evidence tending to show that she intends to violate those terms."  The judge concluded that Marie, still living in the house, had not proved "actual damages," but that she had "merely proven 'negligence in the abstract,'" citing International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass. App. Ct. 215, 217 (1990).  The judge concluded that "a loss of rights" requires additional proof of actual damages, and that Marie's unease that Paul and Cynthia might someday seek to evict her amounted only to "emotional distress damages" that, the jury were instructed without

---

[6] The law firm was liable as well.  See note 2.

objection, were not recoverable for legal malpractice in the circumstances of this case.[7]

3. <u>Discussion</u>. "Judgment notwithstanding the verdict is to be granted cautiously and sparingly." <u>Matley</u> v. <u>Minkoff</u>, 68 Mass. App. Ct. 48, 52 (2007). In evaluating a defendant's motion for judgment n.o.v., "we consider whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." <u>Haddad</u>, 455 Mass. at 94 n.5 (citations omitted). The judge concluded, and the defendants argue here, that Marie did not suffer the "appreciable harm" that triggers the accrual of a cause of action for legal malpractice. <u>Cantu</u> v. <u>St. Paul Cos</u>., 401 Mass. 53, 57 (1987). What is required is "injury, loss or detriment that is capable of being measured or perceived." <u>Kennedy</u> v. <u>Goffstein</u>, 62 Mass. App. Ct. 230, 233 (2004) (citation omitted).

Here, the jury were entitled to conclude that as a proximate and reasonably foreseeable result of Ryan's negligence, Marie failed to obtain a valuable property right she otherwise would have: a life estate in the Springfield house. Deprivation of such a property right is actual damage that is cognizable in a tort action such as this. The value of a

---

[7] The availability of emotional distress damages in this case is something we need not address and do not decide in light of our disposition.

property right lies in, among other things, the rights it gives one to possession and to free alienation of the property. Deprivation of those rights is, under our legal system, an archetypal injury in fact. See, e.g., Blood v. Nashua & Lowell R.R. Corp., 2 Gray 137, 139-140 (1854) (Shaw, C.J.) (tortious interference with right incident to property ownership amounts to legally cognizable injury); Commissioner of Pub. Health v. Bessie M. Burke Memorial Hosp., 366 Mass. 734, 743 (1975) (Kaplan, J.) ("diminish[ing] or defeat[ing] an existing property interest" does an individual "injury"). Our Supreme Judicial Court opined more than 160 years ago that "the conversion or tortious taking" of an individual's stock certificate was actionable. Smith v. Hurd, 12 Met. 371, 386 (1847). In that circumstance, the individual need not wait until he or she would have sold the stock to demonstrate damage. Ibid. The property interest in the certificate has value, and its deprivation works "injury." Ibid.

So it is with the life estate in this case. It is no answer to Marie's claim against Ryan that but for his negligence she would have a life estate to say that it does not matter because her children allow her to live in the house at their sufferance. The latter fact may be a question to submit to the jury that must determine the value of the lost life estate. But the fact that because of Ryan's negligence she has no right to

alienate the property during her lifetime by, for example, renting or mortgaging it, means that she did not obtain something of value that she otherwise would have.  She is damaged by that loss and should properly be compensated for it, even without proof that she had present plans to exercise her right to alienation.

This is thus not a case in which Ryan committed only "negligence in the abstract," because no harm yet has accrued to Marie.  International Mobiles Corp., 29 Mass. App. Ct. at 217. When a tortious act prevents someone from obtaining a valuable life estate, that individual has suffered damage and a cognizable injury for which she is entitled to redress.[8]  That suffices to resolve this case.[9]

---

[8] The defendants argue in the alternative that Marie failed to mitigate completely her damages by taking Paul's offer, as described in the text, supra.  We disagree.  The offer contained restrictions that rendered it less than equal to a life estate.

[9] Although the decision below might be read to rest in the alternative on the ground that the amount of damages was speculative, we do not address the issue.  The defendants have not raised any argument before us that the amount of damages was speculative, and therefore that argument is waived.  See Commonwealth v. Swartz, 454 Mass. 330, 336 n.5 (2009) (alternative ground for affirmance not argued before appellate court deemed waived); U.S. Bank Natl. Assn. v. Schumacher, 467 Mass. 421, 426 n.10 (2014) (potentially dispositive issue not raised in party's appellate brief deemed waived), citing Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).  See also Travenol Labs., Inc. v. Zotal, Ltd., 394 Mass. 95, 97 (1985).  Furthermore, the defendants did not make any argument about the amount of damages in their motion for a directed verdict, and thus, to the extent the judge did rely on any such

The order granting judgment n.o.v. is reversed, and the jury's verdict awarding damages to Marie is reinstated. Judgment is to enter for Marie consistent with the jury verdict.

<u>So ordered</u>.

---

argument, it was an improper ground for granting judgment n.o.v. <u>Matley</u>, 68 Mass. App. Ct. at 52 (reversing where "the basis upon which the defendant's motion for a judgment n.o.v. was allowed was not asserted in the motion for a directed verdict"). See <u>Shafir</u> v. <u>Steele</u>, 431 Mass. 365, 371 (2000) ("[A] party may not raise an issue in a motion for judgment n.o.v. that was not raised in a motion for directed verdict"). See also Mass.R.Civ.P. 50(b), as amended, 428 Mass. 1402 (1998) (party moving for judgment n.o.v. does so "in accordance with [its] motion for a directed verdict"). Requiring the asserted ground for judgment n.o.v. to be included in a motion for directed verdict ensures a plaintiff "an opportunity to seek leave from the court" to "rectify any deficiencies in its case." <u>Matley</u>, <u>supra</u>, quoting from <u>Bonofiglio</u> v. <u>Commercial Union Ins. Co.</u>, 411 Mass. 31, 35 (1991). This rule prevents plaintiffs from being "ambushed" by a defendant's new argument after the time for submitting additional evidence to the jury is finished. <u>Id</u>. at 53.