NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1241

LAWRENCE BUCCI & another[1]

vs.

LINDSEY CAMPBELL & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial in the Superior Court, a jury found that the defendants, William and Lindsey Campbell, had breached a contract with the plaintiffs, Lawrence and Pamela Bucci, by failing to install a natural gas line to the lot that the Buccis had purchased from the Campbells.  The Buccis also prevailed on their claims of breach of the implied covenant of good faith and fair dealing and of negligent, but not intentional, misrepresentation by Lindsey.[3]  The jury found for the Campbells

_____

[1] Pamela Bucci.

[2] William Campbell.

[3] When referring to Lindsey Campbell or Lawrence Bucci individually, we will use their first name.

on their counterclaim of breach of contract based on the Buccis' failure to release the last part of the purchase price, which was held in escrow under a side agreement.  The trial judge, who had reserved the Buccis' claim under G. L. c. 93A, subsequently ruled in favor of the Campbells on that claim and denied both parties' motions for judgment notwithstanding the verdict.  On the Buccis' appeal,[4] we affirm the jury verdict but vacate the judge's dismissal of their c. 93A claim.

Background.  The following evidence was presented at trial. The Campbells were the owner-developers of the Hummingbird Lane subdivision in Westford.  Their subdivision plan, approved by the town planning board, contemplated that the lots would be serviced by underground natural gas (and electric) lines.  The Campbells, however, had concerns about the cost of installing the natural gas line; Lindsey had numerous communications with National Grid representatives from November 2017 through October 2018 discussing the costs and cost-saving options for installing the line.  In July 2018 Lindsey learned that all National Grid projects had been delayed until at least the spring of 2019 because of a work stoppage.

---

[4] The Campbells filed a notice of appeal from the judgment, after which the Buccis filed a notice of cross appeal.  The Campbells' appeal was dismissed for lack of prosecution.  See Appeals Court Rule 19.0.

2

On October 30, 2018, Lindsey, who was a real estate agent, listed "Lot 2" of the subdivision for sale; the listing sheet stated "Gas:  Nearby."  The Buccis testified that having a natural gas line was very important to them, and that Lindsey promised during a meeting in early November 2018 that the lot would be serviced by a gas line.  Lindsey testified that she made no such promise and told Lawrence only that she "hoped for natural gas" but that installation was unlikely because of the National Grid work stoppage.  Lindsey denied that at the time of that meeting she had already decided to forego natural gas.  Indeed, as late as April 2019 Lindsey continued to communicate with National Grid about the possibility of installing a gas line.

On November 19, 2018, the Campbells and Lawrence entered into a purchase and sale agreement whereby Lawrence acquired Lot 2 of the subdivision for $330,000.  Shortly before closing on the purchase in late February 2019, it became apparent that the Campbells needed cash to pay their contractor for site excavation work and for other work necessary to deliver the Buccis' lot.  Accordingly, the parties entered into a "side agreement" (the escrow agreement) in which the Campbells agreed that $90,000 from the sale proceeds would be distributed directly to their contractor and further agreed to "perform the work required by the Town of Westford for the roadway,

3

stormwater management systems, infrastructure, utilities, and landscaping" for Lot 2 as required in the subdivision plan.  For this purpose, they agreed that $40,000 from the sale proceeds would be placed in an escrow account "to be utilized by the Campbells to pay for the work referenced herein as needed," with any remaining balance to be released to the Campbells "once the binder coat of black top [had] been laid" for the roadway.  The Campbells immediately disbursed almost $29,000 of the escrowed funds to the contractor for additional work, and later disbursed another $5,500, leaving a balance of just over $5,000.  When the binder coat was laid in May 2019 without a natural gas line having been installed, the Buccis refused to release the balance of the escrowed funds.  The Campbells then applied for and obtained a modification of their approved subdivision plan from the planning board, releasing them from the plan's requirement to install natural gas lines.[5]  Shortly thereafter, the Buccis initiated this lawsuit against the Campbells.

Discussion. 1. Intentional misrepresentation.  The Buccis challenge the jury's verdict that Lindsey's statements prior to the Buccis' purchase of the property did not amount to

---

[5] The notice of approval of the modification stated that the approved subdivision plan included a "requirement to install the proposed gas line," but that nothing in the planning board's rules and regulations required installation of natural gas lines and that the proposal not to install a gas line was a "minor change to the approved plan."

4

intentional misrepresentations.  The Buccis bear "a particularly heavy burden" to prevail on this claim.  Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 594 (2007).  See Cahaly v. Benistar Prop. Exch. Trust Co., 451 Mass. 343, 350, cert. denied, 555 U.S. 1047 (2008) ("nullifying a jury verdict is a matter for the utmost judicial circumspection").  "An appellate court will not set aside a jury verdict on any material fact found by a jury unless the jury verdict or fact has no rational basis in the evidence." Brewster Wallcovering Co., supra at 594-595.  "A jury verdict will be upheld so long as 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of" the prevailing party.  Id. at 595, quoting Tufankjian v. Rockland Trust Co., 57 Mass. App. Ct. 173, 178 n.9 (2003).

To establish intentional misrepresentation, a plaintiff must prove "(a) an intentional or reckless (b) misstatement (c) of an existing fact (d) of a material nature, (e) causing intended reasonable reliance and (f) financial harm to the plaintiff."  Welch v. Barach, 84 Mass. App. Ct. 113, 120 n.11 (2013).  Lindsey testified that at the time of her meeting with Lawrence in early November 2018, she had not yet decided to install propane instead of natural gas, and that she told Lawrence that she "hoped for" natural gas but that a National

5

Grid work stoppage made the installation of a gas line unlikely. Indeed, there was evidence that in January 2019 Lindsey was still "reaching out [to National Grid] to try to see if anything was changed or what possibilities there were in regard to natural gas." Even if her testimony at trial was inconsistent with her deposition testimony, the jury were free to believe or disbelieve, in whole or in part, any part of her testimony, and to discredit the Buccis' testimony to the contrary. See Commonwealth v. Tennison, 440 Mass. 553, 566 (2003); Calderone v. Wright, 360 Mass. 174, 176 (1971); Klayman v. Silberstein, 252 Mass. 275, 278 (1925). Indeed, "[r]eview of these motions require[s] us to construe the evidence in the light most favorable to the nonmoving party and disregard that favorable to the moving party." O'Brien v. Pearson, 449 Mass. 377, 383 (2007).

The jury found that any misrepresentations made by Lindsey were negligent but not intentional. As the evidence provided a rational basis from which they could do so, we have no basis to set aside the verdict on the intentional misrepresentation claim.

2. Breach of contract counterclaim. The Buccis argue that the judge erred in denying their motion for judgment notwithstanding the verdict on the Campbells' counterclaim for breach of contract. As the case was presented to the jury, the

6

Campbells claimed that the Buccis breached the escrow agreement by refusing to release the remaining balance of $5,357 as soon as the binder coat was laid.  The Buccis argued that they were excused from any contractual obligation to release the escrow funds because the Campbells breached the escrow agreement first -- by disbursing funds before the binder coat was applied.  See Coviello v. Richardson, 76 Mass. App. Ct. 603, 609 (2010) ("a material breach of contract by one party excuses the other party from performance as a matter of law" [quotation omitted]).  The jury had a rational basis in evidence for rejecting the Buccis' argument and finding in favor of the Campbells.  The escrow agreement permitted them to use escrowed funds to pay their contractor "for the work referenced herein as needed," which was not limited to installation of a gas line, but included any work "for the roadway, stormwater management systems, infrastructure, utilities, and landscaping."

In their motion for judgment notwithstanding the verdict, the Buccis argued that the Campbells' theory of breach of contract should not have gone to the jury because it varied from the contract claim alleged in their counterclaim.  As to this argument, the judge ruled that the Buccis had "waived objection to the jury deciding this issue."  We agree with the judge in this regard, as the Buccis made no objection at trial to the

jury instructions or to the verdict slip.[6]  See Motsis v. Ming's Supermkt., Inc., 96 Mass. App. Ct. 371, 383 (2019). Furthermore, as the Buccis were on notice of the implicit amendment of the complaint to conform to the evidence, and the case was fully and fairly tried on that basis, the judge did not err in permitting the claim to go to the jury.  See St. Clair v. Trustees of Boston Univ., 25 Mass. App. Ct. 662, 669-670 (1988).

The Buccis also made a new argument, which they continue to advance on appeal:  that the Campbells' prior breach, excusing the Buccis' obligation to release the balance of the escrowed funds, was the Campbells' failure to install the natural gas line.  Because this argument was raised for the first time in the motion for judgment notwithstanding the verdict and was not asserted in the Buccis' motion for a directed verdict,[7] it is

---

[6] Counsel for the Buccis stated during the charge conference that he believed the "escrow issue" was "out of the case because it was pled as tortious interference"; the judge responded that the Campbells' contract claim was still "in the case," and that the nature of that claim was an issue to be clarified between counsel.  During closing argument, counsel for the Buccis addressed the Campbells' claim for breach of the escrow agreement as presented and without objection.

[7] The Buccis' motion for a directed verdict focused on the Campbells' assertion that the Buccis failed to provide the twenty-day notice of default and opportunity to cure set forth in the escrow agreement.  Counsel for the Buccis argued that notice to cure was futile because the Campbells would not have been able to install a gas line in twenty days.  This line of argument was not sufficient to alert the judge of any claim that failure to install the gas line was a breach of the escrow

waived. "As a motion for judgment notwithstanding the verdict is technically a revised motion for a directed verdict, no grounds for the motion for judgment notwithstanding the verdict may be raised which were not asserted in the directed verdict motion." Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 34 (1991), S.C., 412 Mass. 612 (1992). See Shafir v. Steele, 431 Mass. 365, 371 (2000); Motsis, 96 Mass. App. Ct. at 382; Matley v. Minkoff, 68 Mass. App. Ct. 48, 52 (2007).

3. Liability under G. L. c. 93A. The Buccis argue that the trial judge erred in entering judgment against them on their c. 93A claim. "[W]hether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact. But whether conduct found to be unfair or deceptive rises to the level of a chapter 93A violation is a question of law" (quotations and citations omitted). H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 13-14 (2022). Of the four elements necessary to prove a claim under G. L. c. 93A, § 9, see Rafferty v. Merck & Co., 479 Mass. 141, 161 (2018), the only element at issue here is whether the Campbells' conduct amounted to unfair or deceptive acts or practices. We review the trial

---

agreement excusing the Buccis' performance. See Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 35-36 (1991), S.C., 412 Mass. 612 (1992) ("The requirement that a litigant state specific grounds in support of a motion for directed verdict is an important one" in part because "[i]t allows the judge knowingly to rule on the question before him").

9

judge's conclusions of law on this issue de novo.  See Casavant

v. Norwegian Cruise Line Ltd., 460 Mass. 500, 503 (2011).

The judge found that the Campbells' conduct in dropping the

natural gas line from the project was "a bit sleazy," and that

they relied on "an extremely weak claim," hoping that the Buccis

would not challenge them.  Nonetheless, the judge concluded that

the Campbells' conduct did not "rise to the level of rascality[8]

or misconduct required" for a c. 93A violation.  We disagree.

The Buccis suggest incorrectly that because the jury found

Lindsey liable for negligent misrepresentation, the judge was

bound to find a c. 93A violation.  See Specialized Technology

Resources, Inc. v. JPS Elastomerics Corp., 80 Mass. App. Ct.

841, 844 (2011) ("a jury's verdict on related common-law claims

is not binding on a judge who has reserved determination of a

c. 93A claim to herself").  "It is indeed both possible and

feasible for a judge deciding a c. 93A claim to make findings of

---

[8] The standard for a c. 93A violation does not include an inquiry into "rascality."  See Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 42-43 (1995) ("We view as uninstructive phrases such as 'level of rascality' . . . in deciding questions of unfairness under G. L. c. 93A").  If "rascality" has any relevance, it is limited to business-to-business transactions.  See Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 475-476 (1991); Greenery Rehabilitation Group, Inc. v. Antaramian, 36 Mass. App. Ct. 73, 78-79 (1994); Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979).  The judge's reliance on the "rascality" standard may have led to error in his ultimate finding.

10

fact that are contrary to those made by a jury on a parallel common law claim." Kattar v. Demoulas, 433 Mass. 1, 12 (2000).

Nonetheless, the judge's findings clearly demonstrated that he agreed with jury's verdict. Although he stated that the verdict was not "advisory" and had "no issue preclusive effect" on him, he found "that the jury's verdicts were the product of careful and cautious consideration of the evidence and careful and cautious consideration of the court's written jury instructions," going on to note that "[t]he lengthy verdict slip was executed logically and carefully in all details, reflecting the jury's careful attention to the evidence and the jury's careful attention to the court's instructions." In that logical and careful verdict slip, the jury found both that the Campbells breached the implied covenant of good faith and fair dealing in their agreement to install a natural gas line to the Buccis' property, and that Lindsey negligently (but not intentionally) supplied false information to the Buccis on which they reasonably relied to their detriment. Based on the judge's acceptance of the jury's findings, combined with his additional subsidiary findings, we conclude as a matter of law that the Campbells' conduct was both "deceptive" and "unfair" within the meaning of c. 93A. See Chiulli v. Liberty Mut. Ins., Inc., 97 Mass. App. Ct. 248, 259 (2020) (judges' ultimate findings will be set aside when inconsistent with subsidiary findings).

11

"An act or practice will be found deceptive if, first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material" (quotations omitted). Connor v. Marriott Int'l, Inc., 103 Mass. App. Ct. 828, 836 (2024). Lindsey's negligent misrepresentation satisfied all three of these conditions. Indeed, "we decided some years ago that 'negligent misrepresentation of fact the truth of which is reasonably capable of ascertainment is an unfair and deceptive act or practice within the meaning of c. 93A, § 2 (a).'" Golber v. BayBank Valley Trust Co., 46 Mass. App. Ct. 256, 261 (1999), quoting Glickman v. Brown, 21 Mass. App. Ct. 229, 235 (1985). See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 62 (2004). The jury's finding of negligent misrepresentation, supplemented by the judge's findings that the Campbells' conduct was "a bit sleazy," and that they hoped to save money by sneaking an "extremely weak" (albeit "nonfrivolous") claim past the Buccis, was sufficiently "extreme or egregious" to qualify as a c. 93A violation. See O'Connor v. Merrimack Mut. Fire Ins. Co., 73 Mass. App. Ct. 205, 216-217 (2008).

In addition, "a breach of the implied covenant of good faith and fair dealing may constitute an unfair or deceptive act or practice for the purposes of G. L. c. 93A." Massachusetts

12

Employers Ins. Exch. v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995).  The jury's finding that the Campbells breached the implied covenant of good faith and fair dealing, supplemented by the judge's finding that they did so for their own economic advantage, compels the conclusion that their conduct was deceptive as a matter of law.  See Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 587 (2024), quoting Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991) ("Business conduct 'in disregard of known contractual arrangements' and aimed at securing benefits for the breaching party is an unfair act or practice under G. L. c. 93A").  See also Anthony's Pier Four, Inc., supra (agreeing that judge's rulings finding violation of covenant of good faith and fair dealing but denying c. 93A claim "cannot be squared").

The Campbells' conduct was also "unfair."  "We have stated that a practice or act will be unfair under G. L. c. 93A, § 2, if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people."  Connor, 103 Mass. App. Ct. at 834-835, quoting Heller Fin. v. Insurance Co. of N. Am., 410 Mass. 400, 408 (1991).  In this regard, the Attorney General defines "fail[ure] to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer

13

or prospective buyer not to enter into the transaction" as a violation of c. 93A. 940 Code Mass. Regs. § 3.16(2) (2020). The Campbells' failure to fully disclose their reluctance to pay for installation of a natural gas line or their intent to allow the contractor to lay the binder coat without first installing the gas line also amounted to an unfair business practice.

Based on the subsidiary facts found by the judge, and applying de novo review of his legal conclusions, judgment should have entered for the Buccis on their c. 93A claim. By contrast, the ambivalence of the judge's findings -- pronouncing the Campbells' conduct to be "sleazy," yet not rising to the level of a c. 93A violation -- does not compel the legal conclusion that the Campbells' "use or employment of the act or practice was a willful or knowing violation" requiring multiple damages. G. L. c. 93A, § 9 (3).

Chapter 93A does not mandate multiple damages for negligent misrepresentations. See Hyannis Anglers Club, Inc. v. Harris Warren Commercial Kitchens, LLC, 91 Mass. App. Ct. 555, 561 (2017); VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 623 (1994). "To be wilful or knowing, a violation need not be malicious, but must constitute more than negligence. Within that range is conduct that is intentionally gainful, . . . or demonstrates a wilful recklessness or conscious, knowing disregard for its likely results" (quotation omitted). Chiulli,

14

97 Mass. App. Ct. at 260.  As the judge's subsidiary findings do not conclusively demonstrate intentional conduct, contrast Hyannis Anglers Club, Inc., supra, we remand the case for further findings, and the taking of further evidence if necessary, to determine whether to impose multiple damages.

Conclusion.  The case is remanded for entry of judgment in favor of the Buccis on their c. 93A claim; for further findings as to whether the Campbells' conduct rose to the level of a willful or knowing violation warranting multiple damages under G. L. c. 93A, § 9 (3); and for an award of reasonable attorney's fees under G. L. c. 93A, § 9 (4).  In all other respects, the judgments are affirmed.  We allow the Buccis' request for an award of their reasonably incurred appellate attorney's fees and costs, limited to those fees and costs incurred in connection with their c. 93A claim.  The Buccis may file with the clerk of this court materials detailing and supporting the requested award within fourteen days of the issuance of this decision, in

15

accord with the procedure outlined in <u>Fabre</u> v. <u>Walton</u>, 441 Mass. 9, 10-11 (2004).  The Campbells shall have fourteen days thereafter to respond.

<u>So ordered</u>.

By the Court (Rubin,
  Massing & Grant, JJ.[9]),

Clerk

Entered:  February 24, 2025.

---

[9] The panelists are listed in order of seniority.